435 A.2d 884

AIMCO IMPORTS, LTD., Appellant,

v.

INDUSTRIAL VALLEY BANK AND TRUST COMPANY

v.

Melvin TWERSKY and Irving Mangel.

Superior Court of Pennsylvania.

Argued Sept. 10, 1980.

Filed Oct. 9, 1981.

Michael Minkin, Philadelphia, for appellant.

Gerald J. St. John, Philadelphia, for appellees.

Before BROSKY, WATKINS and MONTGOMERY, JJ.

BROSKY, Judge:

Appellant commenced this action to recover damages for what it claims was the wrongful cashing of one of its checks by appellee. The check, signed by Irving Mangel, President of Aimco, was made payable to the bank and was used to reduce the size of the balance of a personal loan made by the bank to Mr. Mangel. Appellant contends that the bank knew that Mr. Mangel did not have authority to write the check and therefore breached its contractual and fiduciary duties to Aimco in cashing it. The case is before us on appeal from a grant of summary judgment to appellee. We affirm.

Aimco Imports was incorporated in April, 1971. The two shareholders of the corporation were Irving Mangel and Melvin Twersky. A checking account, opened prior to incorporation, at Industrial Valley Bank (hereinafter IVB) was modified and the signature card for the account indicated that the signatures of both Mangel and Twersky were required as authorized signatures of the account. In January, 1974, a new signature card was executed which provided that any one of four persons, including Messrs. Mangel and Twersky, was the authorized signatory for the account. The signature card made reference to new resolutions that were also filed by Aimco with the bank in January, 1974.

In May, 1974, Messrs. Mangel and Twersky took out personal loans with IVB. The total of the loans was to be $96,500, of which $50,000 was borrowed by Mr. Twersky and his wife. Mr. Mangel and his brother borrowed $71,173.13, $30,000 of which was invested in Aimco and Mr. Mangel's parents borrowed $16,500 which was invested in Aimco. The bank was aware that $96,500 was to be invested in Aimco and apparently suggested that the loans be made to the individuals, not the corporation.

In December, 1974, Mr. Mangel deposited a check in the amount of $185,605 in the Aimco account. The check represented insurance proceeds paid to Aimco as a result of a fire loss incurred by the company. Also, on December 27, 1974, Irving Mangel presented to the bank an Aimco check, in the amount of $35,000, payable to the bank and signed only by

him. He directed IVB to apply the proceeds to reduce the size of the outstanding balance of his loan. This action followed the Bank's compliance with Mr. Mangel's instructions.

Pa.R.C.P. 1035, provides in pertinent part:

(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any.

(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In *Amabile v. Auto Kleen Car Wash*, 249 Pa.Super. 240, 376 A.2d 247 (1977), this court explained that,

The burden of demonstrating that no genuine issue of material fact exists and that one is entitled to a judgment as a matter of law, is on the moving party, and the record must be examined in the light most favorable to the non-moving party.

\* \* \* \* \* \*

. . . Finally, a summary judgment should be granted only when the case is clear and free from doubt. (citing cases) Id., 249 Pa.Super. at 245, 376 A.2d at 249, 250.

Subsection (d) of Pa.R.C.P. 1035 provides:

(d) Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for

summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

We explained the effect of this subsection in *Amabile*, supra, when we wrote:

... [I]f the non-moving party does not oppose a properly supported motion for summary judgment with affidavits, depositions, or the like, he may not rely upon his pleadings to controvert those facts presented by the moving parties' depositions. Id., 249 Pa.Super. at 245, 246, 376 A.2d at 250.

In *Phaff v. Gerner*, 451 Pa. 146, 303 A.2d 826 (1973), the Supreme Court explained,

The purpose of a motion for summary judgment under Rule 1035 is to expedite the trial of a matter. Controverted facts that appear in the pleadings can be verified by either side by persons who would be competent to testify at the trial of the matter. Id., 451 Pa. at 150, 303 A.2d at 826.

See also *Tom Morello Construction Company, Inc. v. Bridgeport Federal Savings & Loan Association*, 280 Pa.Super. 329, 421 A.2d 747 (1980).

As we noted in *Amabile*, supra, a motion for summary judgment "was designed to remedy the situation where there is a sufficiently pleaded but factually improper claim or answer. Id., 249 Pa.Super. at 246, 376 A.2d at 250.

Appellee's motion for summary judgment was supported by affidavits given by the persons who had been the manager and assistant manager of the IVB branch at which the transaction in question took place. Prior to the hearing on the motion, appellant submitted no affidavits or depositions in opposition to it. The affidavit attached to appellant's Petition for Reconsideration was dated March 29, 1979, 28 days after the date of the order from which this

appeal was taken. Mr. Twersky's affidavit, then, with respect to this appeal, cannot be used by appellant to prove the existence of a genuine issue of fact. See Pa.R.C.P. 1035(b) which states that the adverse party may serve opposing affidavits *prior to the day of hearing.*

Because appellant submitted no affidavits or depositions, prior to the hearing, it may not rely on its pleadings to controvert the facts presented in appellee's affidavits. See *Amabile,* supra, *Phaff v. Gerner,* supra.

Of course, mere failure to file counter affidavits does not assure that summary judgment will be granted to the moving party. The moving party's evidence must clearly exclude any genuine issue of material fact. *Marchese v. Marchese,* 457 Pa. 625, 326 A.2d 321 (1974).

In *Amabile* we explained that to grant a motion for summary judgment made by a defendant, it must either refute a material allegation in the complaint or present a complete defense. Id., 249 Pa.Super. at 247, 376 A.2d at 250.

The complaint filed by appellant charges appellee with having breached contractual and fiduciary duties.

While appellee does not cite the source of the bank's contractual obligation, we can only assume that it arises from the terms governing the account established by Aimco with the bank. Attached to the Answer and New Matter filed by appellee are copies of the signature cards for that account and the resolutions pertaining to it filed by Aimco with the bank.

In its Answer to New Matter, appellant said of the resolutions and signature cards, "The documents speak for themselves." We assume that this response is an admission of the authenticity of the documents. Their contents are uncontroverted and provide the basis for our finding that there is no genuine issue of material fact to be decided in this case.

The signature card of January, 1974 indicates that Mr. Mangel had authority, acting alone, to write checks against the account. Paragraph 2 of the resolutions authorized Mr. Mangel to "issue instructions for the conduct of any

account" of Aimco with the bank. Paragraph 3 of the resolutions imposed upon the bank the obligation to honor checks signed by Mr. Mangel (or the other signatories),

including any payable to said Bank or to any signer or other officer or employee of the corporation . . . and may receive the same in payment . . . for the personal indebtedness of any signer or other officer . . . whether or not known to be for the personal benefit of any such person, without any obligation upon said bank to inquire whether the same be drawn or required for the corporation's business or benefit.

This document, attached to the Answer and referred to in the signature card, provided a basis for the lower court's finding that there is no genuine issue of material fact as to appellant's allegation of breach of contract.

It is clear that the terms of the resolutions also belie any claim of breach of fiduciary duty or negligence by the bank. The terms themselves authorize the bank to honor a check written by Mr. Mangel even if it was to be used for his personal benefit.

The motion for summary judgment was therefore properly granted.

Order affirmed.