668 A.2d 136

**Harvey WHITE and Henrietta White, H/W, Appellants,**

**v.**

**OWENS–CORNING FIBERGLAS, CORP., Pittsburgh Corning Corp., Celotex Corporation, H.K. Porter Company, Inc., Eagle–Picher Industries, Inc., Southern Textile Company, GAF Corporation, Rubberoid Company, Inc., Owens–Illinois Inc., Keene Corporation, Armstrong World Industries, Inc., Armstrong Cork Company, United States Gypsum Company, Porter Hayden Co., Foster Wheeler Corporation, York–Shipley Inc., Pars Manufacturing Company, Phelps Packing and Rubber Company, Hercules Packing Corporation, Anchor Packing Company, Harnischfeger Corporation, A.C. & S. Corporation, Flexitallic Gasket Company, Flintkote Company, Garlock Industries, Fibreboard Corporation, Uni–Royal, Inc., National Gypsum Com-**

pany, Peltz Company, Brand Insulations Inc., Raymark Corporation, Turner Newall, A.P. Green Refractories Companies, Allied Corporation, Harvey Hubbell Inc., Prudential Supply Corp., J.H. France Refractories, Inc., Riley Stoker Corporation, Harbison Walker Refractories, American Hoist and Derrick Company, Drever Furnaces, Selas Corporation of America, Ray Oil Burner Company, Bickley Furnaces, Inc., National Airoil Burner Co., Superior Boiler Works, Inc., H.B. Smith, Keeler/Dorr–Oliver Boiler Company, International Boilers and Cleavor Brooks, Appellees.

Superior Court of Pennsylvania.

Argued June 8, 1995.

Filed Oct. 30, 1995.

Reargument Denied Jan. 11, 1996.

8

Robert J. O'Shea, Jr., Philadelphia, for appellants.

Christopher H. Jones, Philadelphia, for Harbison Walker Refractories, etc., appellees.

Before McEWEN, TAMILIA and KELLY, JJ.

KELLY, Judge.

This appeal asks us to determine whether the trial court erred in granting appellee's, Harbison Walker's, motion for

summary judgment. The trial court ruled that appellants', Harvey and Henrietta White's, claim was time-barred as a matter of law by the statute of limitations. We, however, hold that the determination of whether appellants timely filed their complaint after discovering that appellant-husband suffered from asbestosis is one for the jury's resolution. Thus, we reverse.

The relevant facts and procedural history of this case are as follows. Appellants instituted this action on December 5, 1988 seeking damages for appellant-husband's physical injuries resulting from asbestos exposure. The complaint named fifty-four defendants, but Harbison Walker was the only remaining defendant at the time of trial. Trial was conducted in reverse bifurcated form; specifically, the first phase of the trial centered solely on the issue of damages. This phase of the trial, held in December, 1993, with the Honorable Ethan Allen Doty presiding, resulted in a jury verdict of $250,000.00 for appellants.

Appellant-husband was initially exposed to asbestos in 1945 when he worked in the construction industry. Appellant-husband was further exposed to asbestos while working at C.E. Refractories. From 1953 until he retired in 1984, appellant-husband worked for C.E. Refractories as a fork lift operator unloading bags of asbestos.

In March, 1987, appellant-husband was treated by Karen E. Deveney, M.D. for hernia problems. At the time of surgery for appellant-husband's hernia condition, Dr. Deveney discovered abnormalities on an x-ray of appellant-husband's chest. Accordingly, Dr. Deveney referred appellant-husband to Michael A. Grippi, M.D., who diagnosed appellant-husband with pleural and parenchymal asbestos related pulmonary disease and asbestosis on June 30, 1987. Appellants filed the complaint which initiated the present action on December 6, 1988. In addition to the asbestosis diagnosis, at the time of trial, in 1993, appellant-husband displayed discernible physical symptoms of asbestosis. Specifically, appellant-husband had severe

difficulties breathing after walking more than half a block, climbing a flight of stairs, driving a nail, or washing the dishes.

The first phase of the reverse bifurcated trial was held in the Asbestos Trial Group 156 in December, 1993, before Judge Doty. During the trial, Judge Doty ruled that appellee's statute of limitations issue be preserved for disposition at a later date. Judge Doty made it clear in his ruling that the statute of limitations issue could be raised between phases one and two of the trial.

Following a $250,000.00 jury verdict in favor of appellants, on December 27, 1993, appellee filed a motion for post-trial relief. On July 22, 1994, before the court ruled on the post-trial motion, appellee filed a motion for summary judgment. In this motion, appellee alleged that appellants were barred from recovering for appellant-husband's asbestosis and other asbestos-related injuries because the two-year statute of limitations had run. Oral argument on the summary judgment motion was postponed because appellants contended that the statute of limitations issue was not properly preserved during the first phase of the trial. The Honorable Sandra Mazer Moss requested the trial transcripts in order to determine whether the motion was properly preserved. On August 11, 1994, the trial transcript was submitted to Judge Moss.

At oral argument on August 22, 1994, Judge Moss requested that appellee depose Dr. Grippi. In his deposition, taken on August 29, 1994, Dr. Grippi testified that appellant-husband had informed him that appellant-husband had consulted another doctor and was told of abnormalities on his chest x-ray two to three years prior to the visit with Dr. Grippi and that the abnormalities were a result of his asbestos exposure. Prior to the deposition of Dr. Grippi, on November 24, 1993, appellant-husband had been deposed. During that deposition, appellant-husband testified that he had consulted William Gorham, M.D. two or three years before consulting Dr. Grippi. Appellant-husband further testified that he had complained to Dr. Gorham about shortness of breath and had told Dr. Gorham of his asbestos exposure. Appellant-husband also testified that,

pursuant to Dr. Gorham's instruction, he had x-rays performed on his chest. Significantly, appellant-husband testified that Dr. Gorham never informed him of the results of the x-rays.[1] On September 26, 1994, Judge Moss granted appellee's motion for summary judgment. This timely appeal followed.

Appellants raise the following issues for our review:

1. DID THE CALENDAR JUDGE ERR IN GRANTING SUMMARY JUDGMENT AFTER THE COMMENCEMENT OF TRIAL?

2. DID THE LOWER COURT ERR IN GRANTING SUMMARY JUDGMENT WITHOUT CONSIDERING THE EVIDENCE IN THE LIGHT MOST FAVORABLE TO APPELLANTS, THE NON–MOVING PARTIES?

3. DID THE LOWER COURT ERR IN GRANTING SUMMARY JUDGMENT BASED UPON A DISPUTED STATEMENT, ATTRIBUTED TO MR. WHITE, THAT MR. WHITE HAD KNOWLEDGE OF A NON–COMPENSABLE ASBESTOS–RELATED CONDITION SEVERAL YEARS BEFORE HE FILED SUIT?

4. DID THE LOWER COURT ERR IN IMPOSING A DUTY ON APPELLANT [–HUSBAND] TO INVESTIGATE FURTHER A NON–COMPENSABLE, ASYMPTOMATIC ASBESTOS–RELATED CONDITION, WHEN IT WAS DISPUTED THAT APPELLANT [–HUSBAND] HAD THE REQUISITE KNOWLEDGE OF THE OPERATIVE FACTS, AND ALSO DISPUTED THAT FURTHER INVESTIGATION WOULD HAVE UNCOVERED ANYTHING OTHER THAN THAT WHICH WAS ALREADY KNOWN?

Appellants' Brief at 1–2.

Initially, we must address appellee's claims regarding appellants' violations of the rules of appellate procedure. Appellee

---

1. Dr. Gorham since died and his records have been destroyed. Thus, it was impossible to obtain a medical report regarding Dr. Gorham's examination of appellant-husband for trial.

alleges that because appellants did not serve and file a designation of the contents of the record appellants intended to reproduce as well as a statement of issues to be argued on appeal, this appeal should be quashed. We disagree.

 The rules of appellate procedure require an appellant to "serve and file a designation of the parts of the record which he intends to reproduce and a brief statement of issues which he intends to present for review." Pa.R.App.P. 2154. In the event that an appellant fails to file a designation of reproduced record or brief, an appellee may move for dismissal. Pa.R.App.P. 2188. This Court has held that the rules of appellate procedure are "mandatory, not directing" and it is within our discretion to dismiss an appeal when the rules of appellate procedure are violated. *Rappaport v. Stein,* 351 Pa.Super. 370, 374 n. 1, 506 A.2d 393, 395 n. 1 (1985). However, if the failure to comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal. *Savoy v. Savoy,* 433 Pa.Super. 549, 553, 641 A.2d 596, 598 (1994); *Williamson v. Williamson,* 402 Pa.Super. 276, 289, 586 A.2d 967, 973 (1991). Furthermore, this Court is cognizant of Pa.R.App.P. 105(a) which allows liberal construction of the rules in order to "secure the just, speedy and inexpensive determination of every matter to which they are applicable." Pa.R.App.P. 105(a); *Williamson v. Williamson, supra* at 289, 586 A.2d at 973.

 Instantly, appellants' procedural violations which appellee raises are minor and do not warrant dismissal of this appeal. Our review of the issues presented has not been impeded nor have the parties been prejudiced by the procedural violations.[2] Therefore, in order to adhere to the "speedy

**2.** As this Court has noted previously that "we may only consider the facts which have been duly certified in the record on appeal[,]" *School District of Aliquippa v. Maryland Casualty Co.,* 402 Pa.Super. 569, 575, 587 A.2d 765, 768 (1991), appellee's allegation regarding appellants' failure to file a designation of the contents of the record to be reproduced is meritless. Moreover, appellants served and filed a designation of the parts of the record to be reproduced on appeal on October 4,

and inexpensive determination" of this matter, we will employ our discretion and consider the merits of this appeal.

Appellants essentially contend that the trial court improperly granted appellee's motion for summary judgment. First, appellants claim that the trial court erred in considering the summary judgment motion after the commencement of the damages phase of trial. We disagree.

■ Despite the fact that the trial judge must follow specific procedures and standards when ruling on a motion for summary judgment, the trial judge does have some discretion regarding the rules of civil procedure. The rules of civil procedure may be construed in a liberal manner to "secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Pa.R.Civ.P. 126; see also *Slaughter v. Allied Heating*, 431 Pa.Super. 348, 355, 636 A.2d 1121, 1125 (1993), *allocatur denied*, 539 Pa. 669, 652 A.2d 839 (1994). There are two important factors in advancing this notion of liberal construction of the rules of civil procedure. First, there must be no showing of prejudice as a result of the failure to comply strictly with the rules, and second, there must be a showing of good cause. *Delverme v. Pavlinsky*, 405 Pa.Super. 443, 448, 592 A.2d 746, 748 (1991).

■ Instantly, Judge Moss was not in error for considering appellee's motion for summary judgment. Judge Doty expressly preserved the statute of limitations issue for disposition at a later date. It was within Judge Doty's discretion to preserve this issue because of the complexity of asbestos-related cases.[3] Judge Doty was seeking to "secure the just, speedy and inexpensive determination" of the damages phase of the trial. Furthermore, Judge Moss acquired proof of

1994 and filed a concise statement of issues to be presented for review on November 23, 1994.

3. The reverse bifurcated trial simplifies the litigation process in asbestos cases. If the plaintiffs are not entitled to damages, there is no need to delve into the complexities of liability. Judge Doty saw no need to delve into the statute of limitations issue before appellants' damages were determined and, therefore, properly preserved the issue for resolution at a later date.

Judge Doty's preservation of the statute of limitations issue and it was only upon a determination that Judge Doty had preserved the statute of limitations issue that Judge Moss considered appellee's motion for summary judgment. Therefore, appellants' first issue is meritless.

Because Judge Moss correctly considered appellee's summary judgment motion, we must now determine whether her granting of the motion was correct. Appellants claim that the trial court failed to consider the evidence in the light most favorable to appellants as the non-moving party and that the trial court erred in relying on the deposition of a witness to grant summary judgment. Further, appellants claim that the trial court ignored the fact that he did not develop a compensable asbestos-related injury more than two years prior to filing his complaint. We agree.

When reviewing a motion for summary judgment, we are required to adhere to the following principles.

First, the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, must demonstrate that there exists no genuine, triable issue of fact. Pa.R.C.P. 1035(b). Second, the record must show that the moving party is entitled to judgment as a matter of law. *Id.* The court must examine the record in the light most favorable to the non-moving party, resolving all doubts against the moving party. *Kerns v. Methodist Hosp.,* 393 Pa.Super. 533, 536–37, 574 A.2d 1068, 1069 (1990); *Knecht v. Citizens & Northern Bank,* 364 Pa.Super. 370, 373–74, 528 A.2d 203, 205 (1987). It is fundamental that the moving party's evidence must clearly exclude any genuine issue of material fact. *Aimco Imports v. Industrial Valley Bank, etc.,* 291 Pa.Super. 233, 435 A.2d 884 (1981).

*Stidham v. Millvale Sportsmen's Club,* 421 Pa.Super. 548, 558, 618 A.2d 945, 950 (1992). Thus, the trial court must examine the entire record, including the pleadings, depositions, answers to interrogatories, any admissions to the record, and affidavits that were filed by the parties before ruling on a summary judgment motion. *Penn Center House v. Hoffman,*

520 Pa. 171, 175–76, 553 A.2d 900, 903 (1989). After thoroughly examining the record, the trial court must determine whether there is a genuine issue of material fact. *Id.* at 176, 553 A.2d at 903.

When determining the existence of a genuine issue of material fact, the trial court must adhere to the rule set forth in *Nanty–Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). In that case, our Supreme Court enunciated that summary judgment cannot be granted based upon evidence which depends solely on oral testimony. *Id.* at 238, 163 A. at 524. "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts...." *Id.* (quoting *Reel v. Elden*, 62 Pa. 308, 316, 1 Am.Rep. 414, 417 (1869)). A witnesses' credibility is a determination for the jury and necessarily creates a genuine issue of material fact. *Garcia v. Savage*, 402 Pa.Super. 324, 330, 586 A.2d 1375, 1378 (1991). Hence, the general rule "that flows from *Nanty–Glo Borough v. American Surety Co., supra,* is that summary judgment may not be had where the moving party relies exclusively upon oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact." *Garcia v. Savage, supra* at 330, 586 A.2d at 1378.

In granting appellee's summary judgment motion, Judge Moss relied upon Dr. Grippi's deposition testimony and the fact that appellant-husband admitted that he suffered from shortness of breath more than two years prior to filing his complaint against appellee. In doing so, we conclude that Judge Moss improperly decided a genuine issue of material fact. Despite the fact that appellant-husband suffered from shortness of breath in the early to mid–1980's and appellants were admittedly aware of this condition, appellants reasonably contend that they did not know and should not have known that appellant-husband's medical problems were related to asbestos exposure until appellant-husband was first diagnosed with asbestosis and other asbestos-related diseases by Dr.

Grippi on June 30, 1987. Contrarily, appellee contends that appellants should have been aware of appellant-husband's asbestosis and asbestos-related pleural disease at least by 1984 or 1985 when he was x-rayed by Dr. Gorhamm, especially considering appellant-husband's shortness of breath condition.

Dr. Grippi testified that, during his examination of appellant-husband, appellant-husband informed Dr. Grippi that he had been examined a few years earlier by Dr. Gorham. According to Dr. Grippi, appellant-husband told him that Dr. Gorham x-rayed appellant-husband, discussed his asbestos exposure with him, and raised "compelling questions" regarding appellant-husband's health. *See* Trial Court Opinion at 5. Based upon these facts and the x-rays that he had taken of appellant-husband's chest, Dr. Grippi arrived at his June 30, 1987 diagnosis and opined that appellant-husband had asbestosis in November 1986, more than two years prior to the filing of appellants' complaint. But, no other non-testimonial evidence supports Dr. Grippi's opinion as to when appellant-husband developed asbestosis. More importantly, the certified record contains no non-testimonial evidence whatsoever to indicate that appellants knew or should have known that appellant-husband had asbestosis in November 1986. As discussed *infra*, appellant-husband's shortness of breath prior to Dr. Grippi's June 30, 1987 diagnosis should not have been considered by the trial court in determining whether appellants knew or should have known of his asbestos-related medical problems. Therefore, because the credibility of Dr. Grippi and his testimony is a genuine issue of material fact, Judge Moss incorrectly granted appellee's motion for summary judgment.

The dissent incorrectly relies upon appellant-husband's shortness of breath and treatment by Dr. Gorham therefore in concluding that Judge Moss properly granted appellee's summary judgment motion because of appellant-husband's failure to exercise due diligence. In doing so, the dissent calls our attention to the recently decided case of *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245 (1995). In

that case, Justice Montemuro, writing for the majority of the Pennsylvania Supreme Court, stated:

> In *Baumgart [v. Keene,* 542 Pa. 194, 666 A.2d 238 (1995), the Opinion in Support of Reversal sets forth the definition of what constitutes reasonable diligence:
>
>> Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case. Long ago we recognized that "[t]here are few facts which diligence cannot discover, but there must be come reason to awaken inquiry and direct diligence in the channel in which it would be successful." *Deemer v. Weaver,* 324 Pa. 85, 90, 187 A. 215, 217 (1936) (quoting *Madole v. Miller,* 276 Pa. 131, 137, 119 A. 829, 831 (1923)). Reasonable diligence is an objective, rather than a subjective standard. Under this standard, the plaintiff's actions must be evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985) (quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982)). *See also* Restatement (Second) of Torts § 283 comment b. Despite the objective nature of the reasonable diligence standard, "[i]t is sufficiently flexible, however, to take into account difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Burnside,* 351 Pa.Super. at 292, 505 A.2d at 988 (quoting *Petri,* 307 Pa.Super. at 271–72, 453 A.2d at 347). Thus, this case law teaches that a plaintiff is not under an absolute duty to discover the cause of his illness. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.
>
> Opinion in Support of Reversal at ——, 666 A.2d at 244.

Our case-law further enlightens us on what is reasonable under the facts of a particular case. It is well settled that

the statute of limitations is not tolled by mistake or misunderstanding. *Pocono Intern. Raceway [v. Pocono Produce]*, 503 Pa. [80] at 84, 468 A.2d [468] at 471 [1983]; *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 93, 204 A.2d 473, 475 (1964). Also, a diligent investigation may require one to seek further medical examination as well as competent legal representation. *Murray v. Hamot Medical Center*, 429 Pa.Super. 625, 634-35, 633 A.2d 196, 201 (1993), *appeal denied*, 540 Pa. 632, 658 A.2d 796 (1994) (citing *Souders v. Atlantic Richfield Co.*, 746 F.Supp. 570, 573 (E.D.Pa.1990) citing *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259 (1979)).

*Id.* at ——, 666 A.2d at 249.

 Similarly, in *Ingenito v. A.C. & S.*, 430 Pa.Super. 129, 633 A.2d 1172 (1993) (*en banc*), this Court held that a "plaintiff does not need to know that he has a cause of action, or that he has suffered an injury due to another party's wrongful conduct" in order for the statute of limitations to commence running. *Id.* at 134, 633 A.2d at 1174. Rather, when a plaintiff "possesses the salient facts concerning the occurrence of his injury and who or what caused it," that plaintiff has the ability and the duty to investigate further. *Id.* at 134, 633 A.2d at 1175 (quoting *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 291, 505 A.2d 973, 987–88 (1985)). In the event that an issue arises "regarding what is a reasonable time for plaintiff to discover his injury and its cause, the issue is usually for the jury." *Id.* (citing *Hayward v. Medical Center of Beaver County*, 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992)). When, however, the "undisputed facts lead unerringly to the conclusion that the time it took [plaintiff] to discover an injury or its cause was unreasonable as a matter of law, summary judgment" may be appropriate. *Id.*

 Essentially, the purpose of the aforementioned principles of law, collectively known as the discovery rule, is to allow an unknowing plaintiff a reasonable amount of time to discover his injury by excluding from the statute of limitations

period "the period of time during which the injured party is reasonably unaware that an injury has been sustained...." *Hayward v. Medical Center of Beaver County, supra* at 325, 608 A.2d at 1043 (citing *Pounds v. Lehman*, 384 Pa.Super. 358, 363, 558 A.2d 872, 874 (1989). What is reasonable under discovery rule is often "best determined by the collective judgment, wisdom, and experience of jurors...." *Petri v. Smith*, 307 Pa.Super. 261, 271–72, 453 A.2d 342, 347 (1982).[4] Hence, when the issue of the point at which a statute of limitations expired involves a factual determination,

> the determination is for the jury. *Smith v. Bell Telephone Co. of Pennsylvania*, 397 Pa. 134, 142, 153 A.2d 477, 481 (1959). Specifically, *the point at which the complaining*

---

**4.** As Judge Ford Elliott pointed out in her dissent in *Ingenito v. A.C. & S., supra*, "it is clear from reviewing numerous discovery rule cases that generally the issue of due diligence is a factual issue for resolution by a jury; it is only the exceptional case which can be decided at the summary judgment stage." *Id.* at 144, 633 A.2d at 1180. Often, the exceptional cases which warrant summary judgment are "smoking gun" cases where it is clear that plaintiff neglected the duty of due diligence. *Id. See also Holmes v. Lado*, 412 Pa.Super. 218, 602 A.2d 1389 (1992), *allocatur denied*, 530 Pa. 660, 609 A.2d 168 (1992) (holding that summary judgment was proper because decedent unequivocally knew that she had breast cancer over three years before suit was filed); *Carns v. Yingling*, 406 Pa.Super. 279, 594 A.2d 337 (1991) (holding that summary judgment was proper because plaintiff was definitively diagnosed and knew of diagnosis at least two years and three months before suit was commenced); *Ackler v. Raymark Industries*, 380 Pa.Super. 183, 551 A.2d 291 (1988) (holding that summary judgment was appropriate because employee's complaint against employer to recover for asbestos-related injuries was filed more than two years after employee signed workers' compensation under oath which stated that employee had asbestosis). Conversely, there are cases which are less clear cut than the "smoking gun" cases. *See Hayward v. Medical Center of Beaver County, supra* (holding that whether plaintiff should have investigated further a physician's misdiagnosis of blood clot as malignant tumor was issue for the jury); *Morgan v. Johns–Manville Corp.*, 354 Pa.Super. 58, 511 A.2d 184 (1987), *allocatur denied*, 514 Pa. 636, 522 A.2d 1105 (1986) (holding that summary judgment was inappropriate because genuine issue of material fact existed as to whether plaintiff knew that pleural thickening was an injury and whether plaintiff knew that pleural thickening was caused by asbestos exposure); *Burnside v. Abbott Laboratories, supra* (holding that whether plaintiff with uterine problems who knew her mother had used diethyestilbestiol (DES) while pregnant with plaintiff and whose physician informed plaintiff that her problems were not DES-related acted with due diligence was a question of fact for jury).

*party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law. Sadtler v. Jackson–Cross Co., 402 Pa.Super. 492, 501, 587 A.2d 727, 732 (1991).*

*Hayward v. Medical Center of Beaver County, supra* at 325, 608 A.2d at 1043 (emphasis added).

 In *Cochran v. GAF Corp., supra,* the appellant's deceased husband was diagnosed with and informed that he had lung cancer in June 1981. Similarly, in *Ingenito v. A.C. & S., supra,* the appellant's deceased husband was diagnosed with lung cancer and was informed of the diagnosis on June 13, 1984. Despite the fact that the aforementioned decedents knew that they had lung cancer, they did not commence their lawsuits until more than two years after being diagnosed with and informed of their lung cancer. As a result, reasonable minds could not differ in determining that those decedents failed to exercise due diligence in discovering that their lung cancer was caused by their asbestos exposure. Thus, the statute of limitations had expired prior to the initiation of those decedents' lawsuits. Accordingly, *Cochran v. GAF Corp., supra,* and *Ingenito v. A.C. & S., supra,* mandate the use of the discovery rule in asbestos cases where a person who has been exposed to asbestos is diagnosed with lung cancer more than two years prior to initiating his or her lawsuit.

 Furthermore, this Court has ruled that in order for an asbestos-related disease to constitute a compensable injury, the plaintiff must have "discernible physical symptoms, a functional impairment or disability...." *Giffear v. Johns–Manville Corp.,* 429 Pa.Super. 327, 341, 632 A.2d 880, 887 (1993), *allocatur granted,* 539 Pa. 651, 651 A.2d 539 (1994). When a plaintiff is "able to lead [an] active, normal [life], with no pain or suffering, no loss of an organ function and no disfigurement due to scarring," he does not have a compensable injury. *Id.* at 335, 632 A.2d at 884. In *Giffear v. Johns–*

*Manville Corp., supra,* the plaintiff's diagnosing physician detected "extensive pleural thickening and plaque formation" but he was unable to identify any "clinical physiologic impairment" and could not "attribute any physical symptoms to the pleural thickening." *Id.* at 330, 632 A.2d at 882. Consequently, although the plaintiff in *Giffear v. Johns–Manville Corp., supra,* was afflicted with an asbestos-related disease, he could not recover because he was asymptomatic. *Id.* at 345, 632 A.2d at 889. Only if a plaintiff eventually develops discernible symptoms due to his asbestos exposure would he have a compensable injury for which he would be able to institute another lawsuit at that time. *Id.*

Instantly, appellant-husband was not diagnosed with lung cancer more than two years prior to initiating this lawsuit. Moreover, none of appellant-husband's medical records contained within the certified record indicate that appellant-husband was diagnosed with any type of asbestos-related disease prior to June 30, 1987. Rather, only the deposition testimony of Dr. Grippi indicates that "compelling questions" regarding appellant-husband's health *may* have been raised to appellant-husband by Dr. Gorham in 1984 or 1985. Based on the facts of this case, we hold that the question of whether appellants, in bringing their lawsuit, exhibited those qualities of "attention, knowledge, intelligence and judgment" which society requires of its members is a matter for the jury's consideration. Certainly reasonable minds may differ as to whether appellants should have discovered appellant-husband's asbestos-related disease prior to December 5, 1986.[5]

5. According to the dissent, this case is similar to *Cochran v. GAF Corp., supra,* because appellants' "diligent pursual of the medical reports and x-rays with solicitation of medical assessment and legal advice as to their significance unquestionably would have disclosed the existence of asbestosis." (Dissent Opinion at 34). We strenuously disagree with this statement. Appellant-husband stated, at his November 24, 1993 deposition, that he had x-rays taken pursuant to Dr. Gorham's instructions and was never informed of their results. A reasonably person could readily determine that appellant-husband acted diligently by simply following his doctors instructions and having the x-rays performed, even though appellants made no further inquiry as to the results of the x-rays. It is reasonable to determine that appellant-husband assumed his doctor would contact him if his x-rays revealed

■ Additionally, according to appellants, appellant-husband's asbestos-related injuries did not become symptomatic until 1987 at the earliest. Appellant-husband had complained of shortness of breath to Dr. Gorham in 1984 or 1985. Judge Moss incorrectly relied upon this shortness of breath when granting appellee's summary judgment motion. It is common knowledge that breathlessness is associated with any number of non-asbestos-related ailments including lung cancer, excessive cigarette smoking, heart disease, obesity, asthma, emphysema, and allergic reactions. Accordingly, appellant-husband's shortness of breath did not constitute a discernible physical symptom of an asbestos-related disease until at least 1987 when he was diagnosed with asbestosis and began to have difficulties walking more than half a block, climbing a flight of stairs, or washing dishes. Consequently, prior to 1987 appellant-husband did not suffer a compensable injury because appellant-husband's alleged shortness of breath was insufficient as a matter of law to invoke the duty of due diligence for the purposes of barring appellants' claims pursuant to the statute of limitations.[6] *See Taylor v. Owens–Corning Fiberglas Corp.*, 446 Pa.Super. 174, ——, n. 2, 666 A.2d 681, 687 n. 2 (1995). *See also Giffear v. Johns–Manville Corp., supra.* Therefore, the mere fact that appellant-husband may have complained of shortness of breath in 1984 or 1985 should not have been utilized by Judge Moss to hold as a matter of law that appellants' claims are barred by the statute of limitations due to appellant-husband's failure to exercise due diligence to ascertain whether he was afflicted with asbestosis. Accordingly, because the only other factor upon which Judge Moss relied in granting appellee's summary judgment

that he suffered from an asbestos-related disease and/or further medical treatment was necessary.

**6.** If appellant-husband had been diagnosed with lung cancer in 1984 or 1985 by Dr. Gorham, appellant-husband or his wife had been informed of that diagnosis, or medical records further indicated that appellant-husband suffered from another discernable physical symptom, physical impairment, or disability, and was so informed, perhaps the discovery rule would have initiated the statute of limitations period for purposes of appellee's summary judgment motion. *See, Cochran v. GAF Corp., supra; Ingenito v. A.C. & S., supra.*

motion was Dr. Grippi's testimony, we hold that the rule of *Nanty–Glo Borough v. American Surety Co., supra,* was violated when summary judgment was entered against appellants. Any potential neglect of appellant-husband's duty to exercise due diligence for failing to investigate his possible affliction with asbestosis prior to 1987 involves a credibility determination which is a material issue of fact for the jury to resolve.

Based on the foregoing, we reverse the order of the trial court granting appellee's motion for summary judgment and remand the case for further proceedings consistent with this opinion.

Order reversed; case remanded. Jurisdiction relinquished.

Judge TAMILIA filed a concurring and dissenting opinion.

TAMILIA, Judge, concurring and dissenting.

I concur in the disposition by the majority of the appellees' motion relating to appellants' violation of the Rules of Appellate Procedure, Pa.R.A.P. 2154, requiring them to serve and file a designation of the parts of the record which they intended to reproduce and a brief statement of issues which he intended to review. The majority correctly states that the rules are "mandatory, not directing", and it is within our discretion to dismiss an appeal when the Rules of Appellate Procedure are violated. However, the violations are minor and our review of the issues has not been impeded nor have the parties been prejudiced by the violations.

Proceeding in its analysis the majority correctly states principles by which we are bound in reviewing a motion for summary judgment (Majority Opinion, p. 16–17). Despite appellants' contention, Judge Moss properly considered the motion for summary judgment because, due to the unusual nature of the reverse-bifurcated proceeding, damages are determined before liability and it is illogical and inappropriate, if that system is to function, to rule earlier on the liability issue raised by the motion for summary judgment due to the run on the statute of limitations. The complexity of the

liability stage dictates a determination of the existence of damages before liability is considered as the most expeditious and least expensive means to try the case.

The facts disclosed by the trial court record indicate that following a reverse bifurcated trial and $250,000 jury verdict, Judge Moss requested that appellee depose Dr. Michael Grippi. In his deposition taken on August 29, 1994, Grippi stated appellant/husband was told of abnormalities on his chest x-ray two to three years prior to the visit with Dr. Grippi and that the abnormalities were the result of his asbestos exposure (N.T., 8/29/94, p. 11).

The majority, in reversing Judge Moss, relies on the rule in *Nanty–Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932), which held that summary judgment cannot be granted based upon evidence which depends *solely* on oral testimony provided by depositions or affidavits. The rule is stated correctly but it is erroneously applied as the majority ignores evidence of record, aside from Dr. Grippi's deposition. The majority incorrectly states that Judge Moss relied exclusively upon Dr. Grippi's testimony to improperly decide a genuine issue of material fact.

The majority concludes that because appellants and appellee dispute when appellant husband became aware of his asbestos related pleural disease, a genuine issue of fact was created. Application of the discovery rule, as in this case, however, is not based upon subjective beliefs by a plaintiff as to when the disease was diagnosed but upon the time wherein a reasonable person exercising due diligence should have known he was suffering an injury from asbestos. *Cochran v. GAF Corporation, et al.*, 542 Pa. 210, 666 A.2d 245 (1995); *Ingenito v. AC & S, Inc., et al.*, 430 Pa.Super. 129, 633 A.2d 1172 (1993). In addition to testimony from Dr. Grippi, the trial court had available video depositions from Dr. Stanley B. Fiel which supported the testimony from Dr. Grippi and documented, through examination of medical records and taking of a medical history from appellant, his exposure to asbestos between 1946 and 1983, his use of cigarettes for 50 years at one or

more packs per day, and his chronic shortness of breath for the last 8 to 10 years (Records, 12/9/93).

The testimony from Dr. Grippi was to the effect appellant had experienced shortness of breath from 8 to 10 years before being examined and that the shortness of breath and the exposure to asbestosis precipitated the referral by his treating physician to Dr. Gorham. This referral and examination, including x-rays, took place two to three years before the examination by Dr. Grippi in June of 1987 and more than two years before the complaint was filed in this case on December 5, 1988. During trial, defendants presented the testimony of Dr. Fiel, who testified that during his November 8, 1993 evaluation of Mr. White, Mr. White reported shortness of breath for the last 8 to 10 years. This condition, according to Dr. Fiel's examination of x-rays and medical history, was asbestos-related and is consistent with the testimony concerning the 1987 evaluation by Dr. Grippi. Appellants' doctor, in June of 1987, testified that the asbestos-related pulmonary findings ante-dated the abnormal radiographs of March, 1987, by quite some time, and within a reasonable degree of medical certainty Mr. White had asbestosis in November, 1986. Finally, in the testimony of appellant by video deposition and in court at the damage stage of the reverse-bifurcated proceeding, he acknowledged shortness of breath 8 to 10 years before the filing of the complaint.

In that testimony, appellant, in response to a question from counsel as to "how long has your breathing been interfering with the things that you like to do when in your retirement?" replied "About eight years." In the video deposition presented at the liability stage of the reverse-bifurcated proceeding before Judge Moss, the following testimony was elicited from appellant:

Q: Did you tell him about your being short winded, the first doctor you went to?

A: I guess I did, yeah.

Q: Who was the doctor you went to before Doctor Grippi?

A: Doctor Gorham, William Gorham.

Q: Can you spell that for me?

A: William G-O-R-H-A-M.

Q: Gorham, okay. And where was Doctor Gorham's office?

A: Down at 8th Street, but I don't know his number.

Q: Why were you seeing Doctor Gorham?

A: For pressure.

Q: For your blood pressure?

A: I got a pressure condition, yeah.

Q: Did you tell him about your being short winded?

A: Yeah.

Q: Did he give you an exam for that?

A: He took X rays.

Q: Did he tell you what the results of those X rays were?

A: No, he never told me. He asked me—he never told me anything.

(Deposition of Harvey Lee White, 11/24/93, pp. 74–75.) Later in the deposition, the following testimony was elicited:

Q: Do you remember Doctor Grippi discussing with you some X rays you had had two or three years before seeing him?

A: Yeah.

Q: Do you remember where you had those X rays?

A: Doctor Gorham had them in Temple Hospital years ago.

Q: Did anybody from Doctor Gorham's staff or Doctor Gorham himself mention asbestos to you?

A: No.

Q: Did you discuss asbestos?

A: *He asked me had I worked around it and I told him yeah.* He didn't say nothing to me about it.

Q: *And you and Doctor Gorham discussed your shortness of breath; is that right?*

A: *Yeah; something like that, yeah. He didn't—he asked me had I worked around asbestos and I told him yeah. That's all he told me.*

Q: *That was after you told him you were short of breath?*

A: Yeah.

Q: *And then he gave you the X rays; is that right?*

A: No. Doctor Gorham still got the X rays. I got X rays from Doctor Grippi.

Q: You didn't understand me.

*And then Doctor Gorham sent you to have X rays; right?*

A: *Yeah. He sent me to the hospital. The hospital got the X rays.*

Q: *Which hospital?*

A: *Pennsylvania, I guess.* That's where he was on staff. I don't know if he's still there or not.

*Id.* at 150–151 (emphasis added).

This testimony of plaintiff unequivocally establishes that he suffered from shortness of breath which resulted in his solicitation of medical evaluation and treatment, which included a medical history, eliciting information of his exposure to asbestos and resulting in x-rays of his lungs by Dr. Gorham. The condition persisted and two years later a further evaluation was conducted by Dr. Grippi. The evidence obtained from appellant's own testimony clearly establishes the notice required by a party to alert him to the need to file a claim within two years under the discovery rule to avoid being barred from filing a claim under the statute of limitations.

The majority totally ignores appellant's testimony establishing his shortness of breath and seeking treatment, with knowledge of many years of asbestos exposure, more than two years before he filed a complaint.

The majority incorrectly determines that in granting appellees' summary judgment motion, *Judge Moss relied exclusively upon Dr. Grippi's testimony to improperly decide a genuine issue of material fact.*

As shown above, it was not only Dr. Grippi's testimony which traced appellant's medical history and the examination of appellant which established the asbestosis and its onset, it was also appellant's independent non-hearsay testimony which established his shortness of breath and treatment of that condition by Dr. Gorham more than two years before Dr. Grippi's evaluation.

It thus becomes apparent that the majority's reliance on *Nanty–Glo* is inappropriate as it ignores the exception to *Nanty–Glo* that permits summary judgment when the plaintiff testifies in such a fashion as to admit the matter at issue thus eliminating the problem of credibility which would have required submission to a jury. As stated in Standard Pennsylvania Practice 2d, § 32:109, **Exception for use of nonmovant's admissions:**

§ 32:109. **Exception for use of nonmovant's admissions**

Although the Nanty–Glo rule precludes the court's determination of the credibility of any party's oral testimony or testimonial affidavit, even that of the opposing party, as the evidential basis for summarily entering judgment, *it does not preclude reliance on an opposing party's testimonial admissions. The court may grant the motion when the moving party supports a motion for summary judgment by using the opposing party's admissions or the admissions of the opposing party's own witnesses, even though they are testimonial, without considering the credibility of the testimony, for it is an "unconditional surrender" by the opposing party, to which he or she must be held.* (Emphasis added.)

*See Garcia v. Savage,* 402 Pa.Super. 324, 586 A.2d 1375 (1991).

The majority's statement Judge Moss relied entirely on Dr. Grippi's statements is factually incorrect and belied by her Opinion in which she states:

Plaintiffs' Complaint alleges Husband was diagnosed with asbestosis on or about 6/30/87, after chest x-rays taken during unrelated surgery revealed pleural abnormalities. In his deposition, however, Husband described an examina-

tion by a Dr. Gorham "two or three years" prior to his 1987 diagnosis. Husband testified he had complained of shortness of breath, Dr. Gorham inquired whether he had ever worked around asbestos and ordered a chest x-ray when the answer was affirmative. While Dr. Gorham never informed Husband about the x-ray diagnosis Husband never followed up or inquired about his x-ray results (Defendant's Exhibit 3, pp. 81, 150–151, 162), a duty which the law places upon him. *Murray v. Hamot Medical Center*, 429 Pa.Super. 625, 634, 633 A.2d 196, 201 (1993).

(Slip Op., Moss, J., 1/13/95, pp. 1–2.) Later in the Opinion, the trial judge reaffirmed the evidence derived from appellant's statement and concluded he had classic symptoms for which he had sought medical attention before he sought treatment from Dr. Grippi.

Immediately after Husband told Dr. Gorham he had shortness of breath *and* long-time asbestos exposure the doctor ordered investigatory chest x-rays. In a light most favorable to Plaintiffs this occurred in 1984 or 1985. Shortness of breath is a classic symptom of asbestos-related pleural disease, yet Husband did not bother to obtain his x-ray results or otherwise investigate what caused his breathing impairment until March, 1987, two or three years after the original x-rays were taken.

*Id.* at 4.

It is conclusive that Judge Moss properly found as a matter of law that applying due diligence, no material fact relating to the time when the asbestosis should have been discovered existed.

The test which has been applied pursuant to the discovery rule has been frequently stated and is now a fixture in the law. *Ingenito v. AC & S Inc., supra; Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973 (1985). If there was any question that this rule was weakening or that it was expanding to become more subjective rather than objective in relation to when a claimant is required to take definitive action, it has been layed to rest by the most recent pronouncement of the

Pennsylvania Supreme Court in *Cochran, supra.* There, the Supreme Court stated:

> Reasonable diligence is just that, a reasonable effort to discover the cause of an injury under the facts and circumstance present in the case. Long ago we recognized that "[t]here are few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence." *Deemer v. Weaver,* 324 Pa. 85, 90, 187 A. 215, 217 (1936) (quoting *Madole v. Miller,* 276 Pa. 131, 137, 119 A. 829, 831 (1923)). Reasonable diligence is an objective, rather than a subjective standard. Under this standard, the plaintiff's actions must be evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985) (quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982)). *See also* Restatement (Second) of Torts § 283 comment b. Despite the objective nature of the reasonable diligence standard, "[i]t is sufficiently flexible, however, to take into account difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." *Burnside,* 351 Pa.Super. at 292, 505 A.2d at 988 (quoting *Petri,* 307 Pa.Super. at 271–72, 453 A.2d at 347). Thus, this case law teaches that a plaintiff is not under an absolute duty to discover the cause of his illness. Instead, he must exercise only the level of diligence that a reasonable man would employ under the facts and circumstances presented in a particular case.

*Id.* at ——, 666 A.2d at 249 quoting *Baumgart v. Keene,* 542 Pa. 194, 666 A.2d 238 (1995) (Opinion in Support of Reversal at —— – ——, 666 A.2d at 243–244.)) Continuing, the Court stated:

> Our case-law further enlightens us on what is reasonable under the facts of a particular case. It is well settled that

the statute of limitations is not tolled by mistake or misunderstanding. *Pocono Intern. Raceway [v. Pocono Produce,]* 503 Pa. [80] at 84, 468 A.2d [468] 471 [(1983)]; *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 93, 204 A.2d 473, 475 (1964). Also, a diligent investigation may require one to seek further medical examination as well as competent legal representation. *Murray v. Hamot Medical Center,* 429 Pa.Super. 625, 634–35, 633 A.2d 196, 201 (1993), *appeal denied,* 540 Pa. 632, 658 A.2d 796 (1994) (citing *Souders v. Atlantic Richfield Co.,* 746 F.Supp. 570, 573 (E.D.Pa.1990) citing *United States v. Kubrick,* 444 U.S. 111, 123 [100 S.Ct. 352, 360, 62 L.Ed.2d 259] (1979)).

*Cochran, supra* at –– ––––, 666 A.2d at 249.

Appellants allege sufficient information was not available to make a determination after the first record of treatment and x-ray examinations in 1985–86, but it was only after the 1987 examinations that appellant-husband was aware his condition was asbestos-related. As in *Cochran,* in addition to long-time asbestos exposure, appellant had been a heavy user of cigarettes which also might have caused the shortness of breath which was the primary symptom leading to x-ray examination. It is clear from the record there were no more symptoms present at the later examination than at the earlier one and that in both cases the same questions were asked and the same examinations made. It is also evident that the condition, asbestosis, leading to this lawsuit was as obviously discoverable by the appellant in 1986 as it was in 1988 because its progression was static and present at the earlier time. The facts in this case are very similar to those in *Cochran* in that, in *Cochran,* decedent and his survivors chose to believe the cancer diagnosed two years earlier was caused by cigarettes whereas the subsequent examination and death were attributable to asbestos. As in *Cochran,* diligent pursual of the medical reports and x-rays with solicitation of medical assessment and legal advice as to their significance unquestionably would have disclosed the existence of asbestosis.

It therefore is unassailable that the issue of the legitimacy of a claim for liability for damages was a matter of law to be

resolved by granting summary judgment as no factual dispute existed to be determined by the jury. I would affirm the Order granting summary judgment.