J-S16032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J.J.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| B.A.B. | |
| APPEAL OF: B.A.B. | |
| | No. 1501 MDA 2014 |

Appeal from the Order Entered August 5, 2014
In the Court of Common Pleas of Lebanon County
Civil Division at No(s): 2006-20469

BEFORE:  PANELLA, J., OLSON, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED APRIL 21, 2015**

B.A.B. ("Mother") appeals *pro se* from the order entered August 5, 2014, in the Court of Common Pleas of Lebanon County, which awarded her former husband, J.J.B. ("Father"), sole legal custody of their three minor sons: Z.R.B., born in February of 2000; C.J.B., born in May of 2002; and C.M.B., born in September of 2003 (collectively, "the Children"), while Mother retains primary phy*sic*al custody.[1]  We affirm.

This appeal arises from a prior disposition by this Court, wherein we affirmed in part and reversed in part the trial court's May 15, 2013 custody

_____

[1] Mother and Father separated in May of 2006.  A divorce decree was entered on May 18, 2012.

order.  *See J.J.B. v. B.A.B.*, 100 A.3d 306 (Pa. Super. 2014) (unpublished memorandum).  In that order, the court awarded Mother primary physical custody of the Children, awarded Father partial physical custody, and awarded both parents shared legal custody.  However, the order included a tiebreaking procedure with respect to legal custody, providing that "[i]f and only if the parties cannot reach an agreement after consultation regarding an important issue, FATHER shall be granted the ability to render a final and binding decision."  Order, 5/15/13, at 1-2.  In this Court's prior disposition, we concluded that the tiebreaking procedure violated *Hill v. Hill*, 619 A.2d 1086 (Pa. Super. 1993), and struck the provision from the court's order.[2]

_____

[2] The Court reasoned as follows:

> In *Hill*, the trial court granted the parties "shared legal custody with the provision that in the event of conflict, the mother's decision shall prevail."  [619 A.2d] at 1087.  Father asserted on appeal that the trial court's order "effectively granted mother sole legal custody."  *Id.* at 1088.  This [C]ourt agreed, stating as follows:
>
>> The language in the order giving rise to appellant's objection is "In the event of disagreement, Mother's preference shall prevail."  We conclude the court's order is a hybrid, not recognized by statute or decisional law, and effectively deprives father of shared legal custody. . . .
>>
>> [T]he judge sought dual objectives in his order, to grant the parties shared legal custody and at the same time to forestall the parties from returning to

*(Footnote Continued Next Page)*

***J.J.B. v. B.A.B.***, 100 A.3d 306 (Pa. Super. 2014) (unpublished memorandum at 12-14). We then remanded the case, instructing the court "to consider whether, absent its imposition of the improper tie-breaking provision, Father should have sole legal custody since the trial court was

*(Footnote Continued)* ────────────

> court in the event of a disagreement. In so doing, however, the court gave the father authority in name only and deprived him of a legal remedy because he was already awarded "shared legal custody." There is no provision in the law for the order the court issued.

> This Court is neither unaware of nor unconcerned with the fact that granting shared custody involves an inherent risk that couples may reappear on the courthouse steps for further resolution of their conflicts. . . . While theoretically this may be, we trust this will happen only rarely. . . .

> It is abundantly clear . . . that the concept of shared legal custody does not contain the principle of giving one parent final authority in the event of a dispute.

> ***Id.*** at 1088-1089 (citations omitted).

> Based on ***Hill***, we agree with Mother that the trial court erred by describing its award as shared legal custody, but designating Father as the tie-breaker in an failure of the parties to agree with regard to issues encompassed by legal custody. In so doing, the trial court effectively awarded Father sole legal custody.

***J.J.B. v. B.A.B.***, 100 A.3d 306 (Pa. Super. 2014) (unpublished memorandum at 12-13).

essentially granting that status to him in its May 15, 2013 order." **Id.** at 14. This Court affirmed the trial court's order with respect to physical custody.

Thereafter, on June 9, 2014, the trial court held a hearing on the issue of legal custody. During the hearing, the court heard the testimony of the Children's therapist, Ms. C. Katherine DeStefano; Mother's physician, Dr. Timothy Riley; Father; Mother; and the Children's *Guardian Ad Litem*, Mr. Wiley Parker ("the GAL"). On August 5, 2014, the court entered its order awarding Father sole legal custody of the Children. Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal, on September 3, 2014. On September 25, 2014, the court issued an opinion pursuant to Pa.R.A.P. 1925(a).

Mother now raises the following issues for our review.

I. The trial court erred when granting Father full legal custody of the Children.

II. The trial court erred when it declared the review hearing nothing more than regarding the issue of legal custody and no other evidence shall be presented.

III. The trial court erred and abused its discretion when it acted in a prejudice and bias [sic] manner toward [Mother].

Mother's brief at 1-4.[3]

---

[3] We note that Mother's *pro se* brief does not contain a statement of questions involved, as required by our Rules of Appellate Procedure. **See** Pa.R.A.P. 2111(a)(4), 2116(a).

*(Footnote Continued Next Page)*

Our standard of review is well-established:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (quoting *A.D. v.*

*M.A.B.*, 989 A.2d 32, 35–36 (Pa. Super. 2010)).

*(Footnote Continued)* _____

[A]ppellate briefs and reproduced records must materially conform to the requirements of the Pennsylvania Rules of Appellate Procedure. This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*In re Ullman*, 995 A.2d 1207, 1211-12 (Pa. Super. 2010), *appeal denied*, 20 A.3d 489 (Pa. 2011) (citations omitted). While Mother's error permits us to dismiss her appeal, we decline to do so, and we review the merits of Mother's arguments to the extent they are properly preserved and developed in her brief. *See Green v. Green*, 69 A.3d 282, 285 n.2 (Pa. Super. 2013) (quoting *White v. Owens–Corning Fiberglas, Corp.*, 668 A.2d 136, 141 (Pa. Super. 1995), *appeal denied*, 683 A.2d 885 (Pa. 1996)) ("'[I]f the failure to comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal.'").

We have stated:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting

*Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

"The primary concern in any custody case is the best interests of the

child. The best-interests standard, decided on a case-by-case basis,

considers all factors that legitimately have an effect upon the child's

physical, intellectual, moral, and spiritual well[-]being." *J.M.R. v. J.M.*, 1

A.3d 902, 911 (Pa. Super. 2010) (citing *Saintz v. Rinker*, 902 A.2d 509,

512 (Pa. Super. 2006)).

Relevant to this custody case is Section 5328(a) of the Child Custody

Act, 23 Pa.C.S.A. §§ 5321-5340, which provides as follows:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide

adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In her first issue, Mother contends that the trial court erred by awarding Father sole legal custody. The crux of Mother's argument is that Father is abusive toward the Children, and that the court should have awarded her shared or sole legal custody in light of 23 Pa.C.S.A. §§ 5328(a)(2), 5323(e), and 5329(a). Mother's brief at 1-2. Mother also argues that the court erred by failing to credit the testimony of Ms. DeStefano and the GAL, who testified that they were concerned about what Father would do if he were granted sole legal custody. *Id.* at 2-3.

We first address Mother's contention concerning Father's alleged acts of child abuse. As quoted *supra*, Section 5328(a) provides that courts considering an award of custody should give "weighted consideration to those factors which affect the safety of the child . . . ." 23 Pa.C.S.A. § 5328(a). Section 5328(a)(2) provides that courts should consider "[t]he present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical

safeguards and supervision of the child." 23 Pa.C.S.A. § 5328(a)(2).

Sections 5323(e), and 5329(a) provide as follows.

> **(e) Safety conditions.--**After considering the factors under section 5328(a)(2), if the court finds that there is an ongoing risk of harm to the child or an abused party and awards any form of custody to a party who committed the abuse or who has a household member who committed the abuse, the court shall include in the custody order safety conditions designed to protect the child or the abused party.

23 Pa.C.S.A. § 5323(e).

> **(a) Offenses.--**Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty or no contest to any of the offenses in this section or an offense in another jurisdiction substantially equivalent to any of the offenses in this section. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that parent when considering the following offenses:[4]

23 Pa.C.S.A. § 5329(a).

In the trial court's May 15, 2013 opinion, it discussed at length, and rejected, Mother's allegation that Father has engaged in child abuse. **See** Trial Court Opinion, 5/15/2013, at 12-21. In our prior disposition, this Court reviewed the trial court's reasoning and concluded that it did not abuse its discretion. **J.J.B. v. B.A.B.**, 100 A.3d 306 (Pa. Super. 2014) (unpublished memorandum at 18-19).

_____

[4] Section 5329(a) goes on to provide a list of relevant offenses which we need not reproduce here.

During the June 9, 2014 legal custody hearing, additional testimony was presented concerning alleged child abuse by Father. Specifically, the GAL, and the Children's therapist, Ms. C. Katherine DeStefano, testified concerning two incidents of violence that were reported by the Children. In the first incident, Father "grabbed [C.M.B.] and threw him into a chair." N.T., 6/9/14, at 14, 31, 209. While the details of this incident are unclear, the GAL testified that Father became aggressive with C.M.B. because he tried to "pull away" from Father. *Id.* at 209. In the second incident, Father "grabbed [C.J.B.], pulled him, ending up pulling him into like a sign post."[5] *Id.* at 17, 206. Reportedly, this incident occurred because C.J.B. was acting out, or "misbehaving in some fashion." *Id.* at 17, 206. Ms. DeStefano described Father's actions as "accidental." *Id.* at 17. Ms. DeStefano also reported that Father engages in aggressive behavior toward the Children by doing things like pushing or pulling them, that Father yells at the Children and threatens to hit them when they become "rambunctious," and that C.M.B. reportedly overheard Father talking to himself and saying that he "should just kill" Mother. *Id.* at 13, 16, 18-20, 25, 29-30, 32, 53-54. The

---

[5] Ms. DeStefano, the GAL, and Father testified that Father was investigated for child abuse twice since the previous September. N.T., 6/9/14, at 29, 54-55, 133-34, 205-06. However, the investigating agency determined that the allegations of abuse were unfounded. *Id.* at 54-55, 133-34. Father's counsel indicated that one of these investigations resulted from the incident involving a sign post. *Id.* at 54. It is not clear what allegations led to the second investigation.

GAL testified that Father "blows up" and yells at the Children over minor issues. *Id.* at 205, 219-220.

In its opinion accompanying the subject order, the court reaffirmed its view that Father has not committed child abuse. The court found as follows:

> In the past year, FATHER has twice been investigated for child abuse. He was twice cleared of abusing or neglecting his children. For her part, MOTHER stated that she had nothing to do with any report of child abuse. Given the nature of the language we used in our May 15, 2013 Opinion, we would have found it unlikely that MOTHER would directly report FATHER for anything other than very clear abuse. However, MOTHER'S *modus operandi* has always been to employ manipulation of others and we cannot discount the possibility that MOTHER somehow indirectly caused abuse allegations to be proffered.
>
> Regardless of how the abuse allegations were proffered, FATHER was cleared by investigating agency of abusive conduct. Moreover, we are aware that [the GAL] developed a relationship with the parties' sons to the point where they would affirmatively initiate telephone calls with [the GAL]. Had FATHER actually physically abused the [C]hildren we believe that [the GAL] would have brought that to our attention. He did not.
>
> With the above being said, it is clear that the [C]hildren still have a degree of fear for their father. [The GAL] stated: "There is still a level of fear [on the part of the [C]hildren] for their dad, and that is a terrible place for them to be." Moreover, [the GAL] testified that FATHER has continued to act at times in a "counterproductive manner." [The GAL] stated that "sometimes [F]ather's response was way out of proportion to the incident at hand."
>
> Based upon everything we stated in our May 15, 2013 Opinion and upon what we have heard most recently, we stand by the conclusion we rendered in our May 15, 2013 Opinion with respect to abuse. There, we stated:
>
> > We refuse to classify FATHER as a child abuser. FATHER is not a perfect parent. Without question,

> FATHER has a temper that can and has adversely affected the [C]hildren. However, we categorically reject MOTHER's efforts to characterize FATHER as an out of control parent who abuses his children.

Trial Court Opinion, 8/5/14, at 12-13.

Thus, the court considered Father's allegedly abusive conduct when awarding him sole legal custody, as required by Section 5328(a)(2). Based on the evidence presented, it was reasonable for the court to conclude that Father's isolated acts of aggression do not qualify him as a child abuser. Given the court's conclusion that Father does not abuse the Children, the court was not required to give "weighted consideration" to this factor pursuant to Section 5328(a), nor was it required to include safety conditions in its custody order pursuant to Section 5323(e). With respect to Section 5329(a), it is clear that the court has thoroughly considered the extensive history of this case, including prior protection from abuse proceedings and criminal charges against Father.[6] We discern no abuse of discretion.

We next turn to Mother's claim that the court erred by failing to credit the testimony of the GAL and Ms. DeStefano. During the June 9, 2014 hearing, Ms. DeStefano testified that Father "has shown" that he will exercise an "unhealthy" level of control if given sole legal custody. N.T.,

_____

[6] During her discussion of Section 5329(a), Mother avers that the trial court is "aware [F]ather was found guilty of violating [a] PFA" order in 2008, and that Father pled guilty to assaulting Z.R.B. in 2012. Mother's brief at 1. The record reveals that Father pled guilty to simple assault and disorderly conduct in 2012. N.T., 3/14/13, at 129-30. Neither of these offenses requires consideration under Section 5329(a).

6/9/14, at 79. Ms. DeStefano reported that Father did not give C.J.B. his prescribed Prozac during at least two of Father's custodial periods, that Father has repeatedly demanded that C.J.B. be taken off Prozac, and that Father has refused to give Z.R.B. his allergy medication. *Id.* at 69-76. Ms. DeStefano also testified that Father has threatened to prevent the Children from participating in extracurricular activities, that Father has instructed Mother not to schedule the Children's medical appointments during his custodial time, and that Father has tried to prevent the Children from continuing to have appointments with her. *Id.* at 70, 76-79. Similarly, the GAL stated that he did not want Father to receive sole legal custody. *Id.* at 225. The GAL expressed concern that Father would terminate the Children's relationship with Ms. DeStefano, and that Father would stop or prevent C.J.B. from taking recommended medications, including Prozac. N.T., 6/9/14, at 210-11, 213, 225.

In its opinion accompanying the subject order, the trial court addressed specifically the concerns presented by Ms. DeStefano and the GAL relative to the possibility that Father would abuse his power if granted sole legal custody.

> With respect to FATHER's ability to be an accommodating parent, we heard a great deal. However, most of what we heard involved fears of what FATHER <u>might do</u> if he were awarded sole legal custody. Katherine DeStefano testified: "It is not so much that I disagree with what [F]ather has already decided; it is what I fear he will do if given complete power." This is a theme that was mirrored by other witnesses as well. Despite these fears, we discerned only a handful of instances when FATHER actually

- 13 -

asserted the authority we gave him on May 15, 2013. In point of fact, FATHER has continued to allow [C.J.B.] to take Prozac despite the fact that he disagrees with the decision. FATHER continues to support the [C]hildren in their pursuit of a multitude of activities in the Wrightsville area even though it requires him to drive great distances to participate in those activities. MOTHER testified that she did not perceive her parenting role to have changed greatly since May of 2013, and FATHER certainly could have asserted his authority to dramatically change MOTHER's role with the [C]hildren. In short, we do not believe that FATHER abused the parenting authority we gave him by way of our May 15, 2013 Court Order.

To be sure, we understand that FATHER may have been restrained somewhat in exercising his parenting authority by virtue of MOTHER's appeal to the Pennsylvania Superior Court. Nevertheless, we cannot and will not ignore the fact that the Court Order affording FATHER with "tiebreaking" authority was in effect for over a year. During that period of time, we cannot say that FATHER abused his authority or exercised it in a way contrary to the interests of his children.

Trial Court Opinion, 8/5/14, at 11-12.

Again, we conclude that Mother is not entitled to relief. The record supports the trial court's conclusion that Father had tiebreaking authority with respect to legal custody for over a year at the time of the June 9, 2014 hearing, and that he did little, if anything, to abuse his authority. In addition, the subject order alleviates two of the primary concerns presented by Ms. DeStefano and the GAL, as it provides that Father may not take C.J.B. off of Prozac without further order of court, and retains Ms. DeStefano as the Children's counselor. Order, 8/5/14, at 5-7. We acknowledge that the trial court has reached an unusual decision in this matter, by awarding primary physical custody of the Children to Mother, and awarding sole legal

custody of the Children to Father. However, the court has thoroughly explained and justified its decision, and we discern no abuse of discretion.

In her second issue, Mother argues that the trial court erred by limiting the June 9, 2014 hearing to evidence concerning legal custody only. Mother's brief at 4. No relief is due, as Mother has waived this claim by failing to support it with citation to relevant authority. *In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

Furthermore, in our prior decision, we affirmed the trial court on all claims raised by Mother on appeal and remanded solely for the trial court "to consider whether, absent its imposition of the improper tie-breaking provision, Father should have sole legal custody since the trial court was essentially granting that status to him in its May 15, 2013 order." *J.J.B. v. B.A.B.*, 100 A.3d 306 (Pa. Super. 2014) (unpublished memorandum at 14). Based on this instruction, the trial court could simply have ordered that Father be awarded sole legal custody without conducting an additional

hearing at all. The fact that the court held a hearing with respect to legal custody cannot be the basis for a finding of error. No relief is due.[7]

In her third issue, Mother contends that the trial court violated the Code of Judicial Conduct by acting in a prejudiced and biased manner toward her. Mother's brief at 4-9. In support of this argument, Mother provides a list of complaints based primarily on the court's credibility determinations and findings of fact, and on the court's insistence on closely monitoring Mother's health and her recovery from drug addiction. *Id.* In its September 25, 2014 opinion, the trial court stated that it could not address this claim, because it was not presented with sufficient specificity in Mother's concise statement of errors on appeal. Trial Court Opinion, 9/25/14, at 8. In her concise statement, Mother presented this claim as follows: "The [t]rial [c]ourt erred and abused it's [sic] discretion when it acted in prejudice and bias [sic] manner toward [Mother]." Concise Statement of Matters Complained on Appeal, 9/3/14, at 1.

---

[7] As part of this claim, Mother also argues that the court "violated it's [sic] own directions by acutally [sic] changing other areas of the court order without allowing for evidence or testimony that would have affected those changes." Mother's brief at 4. However, Mother does not direct us to any "other areas" of the order that she contends the court changed improperly. Additionally, as before, Mother fails to support this contention with citation to relevant authority. Thus, it is waived. *See W.H.*, 25 A.3d at 339 n.3.

We agree with the trial court, and conclude that Mother has waived this issue by failing to adequately present it in her concise statement. As this Court has explained,

it is well-established that "[an a]ppellant's concise statement must properly specify the error to be addressed on appeal." ***Commonwealth v. Hansley***, 24 A.3d 410, 415 (Pa. Super. 2011), appeal denied, 613 Pa. 642, 32 A.3d 1275 (2011) (citation omitted). "[T]he Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." ***Id.*** (brackets, internal quotation marks, and citation omitted). Further, this Court may find waiver where a concise statement is too vague. ***Id.*** "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." ***Commonwealth v. Dowling***, 778 A.2d 683, 686 (Pa. Super. 2001) (citation omitted). "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." ***Id.*** at 686–87.

***In re A.B.***, 63 A.3d 345, 350 (Pa. Super. 2013).

Moreover, even if we were to reach the merits of this claim, we would conclude that Mother is not entitled to relief. As explained *supra*, the trial court has drafted a series of thorough opinions detailing its credibility determinations and findings of fact, including its August 5, 2014 opinion, which accompanied the subject order, and its September 25, 2014 opinion pursuant to Pa.R.A.P. 1925(a). The court's decision to award Father sole legal custody is supported by competent evidence of record, and nothing

about the court's reasoning suggests that its actions are based on bias or prejudice.[8]

Accordingly, because we conclude that none of Mother's claims entitles her to relief, we affirm the order of the trial court.

Order affirmed.

Judge Panella joins in this memorandum decision.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/21/2015

---

[8] In connection with this claim, Mother attempts to raise a number of other issues. For example, Mother challenges the portion of the court's order providing Father with the authority to hire a family counselor, and requiring that Mother "cooperate with the counseling to be provided by that individual." Mother's brief at 8; Order, 8/5/14, at 5. Mother also challenges the portion of the court's order requiring that Mother's addictions counselor must report to the Children's guardian *ad litem* "anything that is of concern to him regarding MOTHER's addiction and medication intake." Mother's brief at 8; Order, 8/5/14, at 5-6. Again, these claims are not supported by citation to relevant authority, other than Mother's vague assertion that the trial court violated "HIPPA and laws protecting psych. records." Mother's brief at 8. Thus, we conclude that they are waived. *See W.H.*, 25 A.3d at 339 n.3.