**Marsha E. GREEN, Appellee**

v.

**Lester J. GREEN, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 22, 2012.
Filed June 11, 2013.

Douglas G. Linn, II, Butler, for appellant.

Danielle R. Grunden, Butler, for appellee.

BEFORE: MUSMANNO, J., BOWES, J., and WECHT, J.

OPINION BY WECHT, J.

Lester J. Green ("Husband") appeals a September 23, 2011 order that disposed of Husband's Motion to Enforce Settlement Agreement. That order set values for real and personal property that had been divided between the parties, found Husband had received rental income from a marital property, and ordered Wife to pay Husband in order to effectuate a 50/50 split of the marital estate. We affirm.

Husband and Marsha E. Green ("Wife") married on December 18, 1981. Their divorce was initiated in February 2006. On December 22, 2008, the divorce decree issued. A trial on equitable distribution was scheduled for December 3, 2008. In fact, no trial ever occurred.

The trial court summarized what transpired, as follows:

At the December 3, 2008 proceeding, being the time and place for an equitable distribution trial, the parties entered into a Marital Settlement Agreement, which was made an Order of Court on December 30, 2008. Per the agreement, the parties identified the marital and non-marital assets, agreed to the value of the assets, and agreed to a 50/50 distribution of said assets. Exhibit 1 of the December 3, 2008 proceeding, which listed the personal property amounting to approximately $84,000, was intended to be adopted as an Order of Court. The parties had "arduously sat over the last three days and decided which way it [would] be distributed and put dollar amounts to it." "The dollar amounts [were] important because the parties [had] agreed to a 50–50 distribution." Attached to Exhibit 1 was a hand written list, to which both parties represented to counsel was the complete list of personal property. Counsel for both parties then agreed that the attached list could be adopted as an Order. At the time, the court indicated its concern that since the parties were not present to consent to the agreement that something should be forthcoming from the parties indicating that they have signed off on the agreement. However, [Husband's] counsel had previously indicated that a full blown settlement agreement would not be [forthcoming], as the handwritten list was "almost self-executing." [Wife's] counsel then indicated that a Motion to Adopt the Agreement would be [forthcoming].

A Motion to Adopt the Agreement was not presented to the Court. Nonetheless, on December 30, 2008 an Order of Court was entered, which memorialized the agreement that was put on the record at the time of the December 3, 2008 equitable distribution trial. [Wife] filed a Notice of Appeal, but subsequently filed a Praecipe to Discontinue without ever having filed a Concise Statement of Matters Complained of on Appeal. Therefore, the reasoning behind [Wife's] appeal remains unknown. Regardless, the appeal was discontinued and the appeal period expired without [Husband] ever having filed a Motion for Reconsideration, Notice of Appeal, or any form of post-trial relief. As a divorce decree had been previously issued and a final resolution of any claims to equitable distribution reached, the matter has been resolved.

Upon the joint request of the parties, a status conference was held on September 17, 2009. At the time of the status conference, the parties agreed to transfer all real estate and investment accounts within five days. The parties also agreed that all personal property would be exchanged within twenty-one days. The October 5, 2009 Order of Court also reflected the agreement of the parties that "[w]ithin thirty (30) days from the date of this Order of Court, any and all disputes over items of personal property will be resolved—or, in the alternative,—either party may within thirty days of the Order request that a hearing be scheduled before the Court by the procedure as outlined below. If a hearing on this issue is not requested within thirty (30) days of the date of this Order of Court, the matters relating to the distribution of personal property will be deemed resolved and the court will deny any and all requests to hear any and all disputes thereon." Thirty days passed from the time said Order was entered and neither party requested a hearing, nor was any post-trial relief sought.

It was not until April 8, 2010, a full five months after the October 5, 2009 Order of Court, that [Wife] presented the Court with a Motion to Compel. As a result, the Court issued the May 10, 2010 Order of Court, which affirmed the October 5, 2009 Order and ordered that the distribution and valuation of all personal property is complete. Again, no post-trial relief was sought.

No further action was taken on the matter until February 10, 2011, when [Husband] presented the Court with a Motion to Enforce the Marital Settlement Agreement. Following the April 29, 2011 oral argument thereon, the Court issued the May 11, 2011 Order of Court, which found that "the parties did not enter into a formal written marital settlement agreement, but rather agreed to the value and distribution of assets, which was made an Order of Court on December 29, 2008." The court then left the record open for twenty days to allow both parties to file with the Court a trial aid, which was to list the entire marital estate as distributed between the parties, the corresponding values, and what transfers must yet be made to effectuate a 50/50 division of property. The Court also scheduled a hearing for July 25, 2011 in the event testimony became necessary. [Husband] filed a Narrative Report to the Court and a Trial Aid. [Wife] filed a Trial Aid and Amended Trial Aid. Subsequently, both parties appeared for the July 25, 2011 hearing; but, rather than putting testimony on the record, offered only oral argument. Regardless, the Court entertained the oral argument and informed the parties that they may put additional

evidence on the record if they desired. As a result of the April 29, 2011 oral argument, the subsequent Trial Aids, and July 25, 2011 hearing, the Court entered the September 23, 2011 Order of Court, to which Appellant filed the within appeal.

Trial Court Memorandum Opinion and Order of Court ("T.C.O."), 2/9/2012, at 2–5 (footnotes omitted). This appeal followed.[1]

Husband raises three issues on appeal:

1. Did this Honorable Court enter an Order dated September 23, 2011 that constitutes an abuse of this Court's discretion in that the Court made various findings of fact, the support of which is not found in the record or otherwise established by competent evidence?

2. Did this Honorable Court enter an order dated September 23, 2011 that contained references to personal property valuations for those items received by each of the parties, which were not established of record by any stipulation or evidentiary submission at hearing? Moreover, did the Court utilize personal property divisions and related values, which were not agreed to by [Husband] nor acknowledged by [Wife] in her Amended Trial Aid filed with the Court on page 2, first paragraph thereof?

3. Did the Court Order dated September 17, 2009 and entered on October 5, 2009 and the Court Order dated April 26, 2010 and entered May 10, 2010 specifically find that the parties' personal property was divided pursuant to the parties' oral agreement to wit, 50%/50%? By virtue of that Order, was [Husband] unable to challenge or contest the personal property distribution, as he had not requested a hearing in the time prescribed by this Court? Did [Wife] also fail to demand a hearing on the issue of personal property and should have been estopped from challenging the equal distribution of property?

Husband's Brief at 7.

When reviewing an order for equitable distribution, we consider whether the trial court abused its discretion or made an error of law. *Nagle v. Nagle,* 799 A.2d 812, 818 (Pa.Super.2002). If supported by credible evidence of record, the trial court's findings of fact are binding upon the appellate court. *Id.*

Although he asserts three issues on appeal, Husband presents only one argument encompassing the first two of these three issues: to wit, that the lower court lacked a sufficient record upon which to base its September 23, 2011 order.[2, 3] Hus-

---

1. On October 12, 2011, the trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa. R.A.P. 1925(b). Husband filed his concise statement on November 2, 2011.

2. Husband's brief violates Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part ... that particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). However, as the violation has not impeded our review, we

decline to find waiver on that basis. *See White v. Owens–Corning Fiberglas, Corp.,* 447 Pa.Super. 5, 668 A.2d 136, 141 (1995) ("[I]f the failure to comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal.").

3. Husband's argument section does not address his third issue on appeal. Therefore, we find that issue waived for lack of development. *See Umbelina v. Adams,* 34 A.3d 151, 161 (Pa.Super.2011) ("[W]here an appellate brief fails to provide any discussion of a claim

band attacks the court's use of an exhibit and the trial aids.

Husband points out that Exhibit 1 [4] from the December 3, 2008 conference (there never having been a trial in this case) was not admitted as an exhibit. Indeed, the document was never formally moved or admitted into evidence. Husband's counsel maintains that he did not have the opportunity to view Exhibit 1 during the chambers discussion with the court, and that the document did not reflect the agreements reached during negotiations. Husband explains that this is why he refused to accept Wife's proposed order adopting Exhibit 1. Husband's Brief at 15, 17–18.

Wife claims that Exhibit 1 was admitted. Wife maintains that Husband's counsel agreed that Exhibit 1 could be adopted as an order of court. Wife argues that, because the court then relied upon Exhibit 1 as the basis for its September 23, 2011 order and Wife used Exhibit 1 as the basis of her trial aid, Exhibit 1 was properly considered. Therefore, according to Wife, the order was based on competent evidence. Wife's Brief at 6–7.

The learned trial court does recognize candidly that Exhibit 1 was not formally admitted. However, the court characterizes this lapse as a "clerical failure," stating that the parties referred to the document as an exhibit and that it was treated as one (*i.e.*, the court reporter took the document). The court notes that no one objected to the document, and states that Husband's counsel agreed that it could be adopted as a court order. The court asserts that it would be inequitable to permit

Husband to challenge Exhibit 1 on appeal solely on the basis that the court did not expressly admit that exhibit into evidence. T.C.O. at 8–9.

Before we may address whether the trial court properly could consider Exhibit 1, we must determine whether Husband has waived this argument. Issues not raised in the lower court cannot be raised for the first time on appeal and are considered waived. Pa.R.A.P. 302(a). It is clear that Husband did not object to Exhibit 1 at the December 3, 2008 proceeding. However, because the exhibit was not formally moved into evidence, Husband did not have a corresponding opportunity formally to object. Regardless, it became apparent that the trial court intended to use Exhibit 1 as record evidence. Wife's Motion to Enforce Settlement Agreement, filed on July 22, 2009, specifically refers to Exhibit 1 and states that the trial court accepted it. Motion, 7/22/2009, ¶ 3. Husband did not file a response to the motion objecting to that statement, nor did he object to the trial court's use of the exhibit. In later motions, Husband objected because the distribution of the personal property had not yet occurred and the ultimate distribution did not result in a 50/50 split, yet Husband never specifically objected to Exhibit 1. At an April 29, 2011 hearing, Husband's counsel admitted that "all the facts necessary for the Court to reach a conclusion were established at the hearing that led up to your December 29, 2008 order." Notes of Testimony ("N.T."), 4/29/2011, at 3. Husband's counsel also admitted that "[the agreement is] really a hodgepodge of

with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); Pa.R.A.P. 2119(a).

4. Exhibit 1, part of the certified record, consists of two typed pages outlining the marital estate, with some details of how it will be divided, as well as several handwritten and typed pages listing personal property, with valuations and distribution noted.

handwritten scribbles and notes and the like." N.T., 4/29/2011 at 4.[5] Ultimately, Husband was on notice that the trial court intended to use Exhibit 1 as record evidence as early as July 29, 2009. From the record before us, it is clear that Husband did not object to its use at that time or in the following proceedings. Husband raises the issue for the first time on appeal. Therefore, Husband's objection to Exhibit 1 is waived, see Pa.R.A.P. 302(a), and we do not reach it.

▮ Husband's second argument is that the trial aids that Wife submitted to the court were not evidence. Husband asserts that those trial aids contained facts that were not of record. Husband also argues that he never agreed to develop a record for equitable distribution through the use of trial aids. Husband's Brief at 17, 20–21. Wife does not submit a specific argument regarding the use of the trial aids, except to note that Exhibit 1, which she maintains was competent evidence, formed the basis for her trial aid, and that Husband submitted a trial aid as well. Wife's Brief at 8.

▮▮ The lower court ordered the parties to submit trial aids because there were some items not covered in Exhibit 1, and because the trial court required additional information. The trial court concluded that these trial aids became part of the record.[6] Because Husband's trial aid did not specifically dispute the amount or collection of rental income, the trial court found that Husband had retained rental income. The trial court also concluded that the parties could have put evidence on the record at the July 25, 2011 hearing, but chose not to do so. T.C.O. at 11–13.

Nothing in our rules of evidence or civil procedure contemplates the use of "trial aids." At best, a trial aid might be appropriate in some circumstances under Rule of Evidence 1006, which permits admission of a summary of "[t]he contents of voluminous writings ... which cannot conveniently be examined in court." Pa.R.E. 1006. However, Rule 1006 requires both that the underlying writings be made available for inspection by all parties and that the writings being summarized are voluminous. There is no indication that either prerequisite was met here.

The trial aids submitted in this case consist largely of the parties' arguments, which at all events may properly be submitted to the court in the form of written briefs. But the trial aids also contain assertions of fact that lack evidentiary support in the developed record. The court's September 23, 2011 order, at least in part, relies upon averments in Wife's trial aids. There was no competent record upon which to base this determination.

Trial aids appear to be used almost exclusively in family law cases. Otherwise,

---

5. Counsel's characterization of the agreement accurately describes Exhibit 1. Counsel later referred to another document that Wife's counsel used at the April 29, 2011 hearing as a proposal and not the agreement that Counsel referred to earlier in the hearing. N.T., 4/29/2011, at 13, 20–21. The portion of this "proposal" read into the record also coincided with a portion of Exhibit 1. However, Husband's counsel never objected to the use of this proposal, whether or not it is Exhibit 1.

6. The concurrence takes the position that these trial aids "were part of the record because they were filed" (Concurring Op. at 290), and even states that they "served the same function as pretrial statements." Id. at 290. We disagree. While any document, including a "trial aid" or pretrial statement, filed in the Court of Common Pleas becomes part of the record, this mere fact of filing does not and cannot automatically transform such a document into competent evidence upon which the trial court may base its ruling unless and until that document is properly introduced and admitted.

they are creatures unknown. They generally seek to submit to the trial court some admixture of facts and argument as if the documents form an exhibit.

However, Husband here did not object to the use of the trial aids. Wife submitted her trial aid prior to Husband's submission. Husband knew what averments Wife had made. Yet he took no action to object to Wife's trial aid, and he sought no evidentiary hearing before the trial court. While it was error for the trial court to rely upon Wife's "trial aid" averments unless they were properly admitted through testimonial or documentary evidence of record, Husband waived the issue by not properly raising it before the trial court. *See Summers v. Summers*, 35 A.3d 786, 790 (Pa.Super.2012).

Order affirmed. Jurisdiction relinquished.

Judge BOWES files a concurring opinion.

## CONCURRING OPINION BY BOWES, J.:

I agree with the majority's resolution of this matter but must part company with its criticism of the use of trial aids, which I found to be appropriate in the present lawsuit.

On December 3, 2008, when this matter proceeded to a hearing on equitable distribution, the parties appeared before the trial court and represented that they had entered a marital settlement agreement. At the December 3, 2008 proceeding, the marital settlement agreement was referred to as Exhibit 1, and the parties stated that it represented the terms of the accord. Exhibit 1 was not introduced into evidence at that time, but on December 29, 2008, the court entered an order setting forth that the "parties have identified the marital and non-marital assets, have agreed to

the value of the assets and have agreed to the specific distribution of the assets. The parties further agree to a 50/50 distribution of the assets." Order of Court, 12/29/08, at 1.

Then, Wife filed a petition to enforce the marital settlement agreement on July 22, 2009, and she averred that the accord was outlined in an unexecuted document attached to her petition as Exhibit A. Exhibit A is the same document referred to as Exhibit 1 at the December 3, 2008 proceedings as it contained: 1) a complete outline of the marital assets; 2) a list of non-marital assets; 3) resolution of various miscellaneous matters; 4) a proposed fifty/fifty distribution of the marital property; and 5) with a few exceptions, an assigned value to all marital assets. As a result of Wife's July 22, 2009 petition, a final resolution was reached as to disposition of the personalty and the parties thereafter distributed the marital real estate. Wife filed a second petition to enforce, and the record establishes that after that petition was granted, the value of only two marital assets outlined in the marital settlement agreement remained unassigned: 1) the net value of one parcel of realty containing a home with a mortgage that was distributed to husband; and 2) rental income retained by Husband and received by him after separation and before entry of the marital accord.

Nine months after resolution of Wife's second petition, Husband filed a petition to enforce the agreement that led to entry of the order contested in the present appeal. In that document, Husband admitted that the "parties to the above-captioned action entered into a comprehensive marital settlement agreement, which was adopted as an order of court[.]" Motion to Enforce Marital Settlement Agreement, 2/4/11, at ¶ 3. In that petition, Father maintained that there had been an unequal distribu-

tion of realty and that he was entitled to a monetary distribution from Wife so as to achieve the agreed-upon fifty-fifty split of marital assets.

Since it had entertained two prior petitions to enforce the marital accord, the trial court requested trial aids. There is no indication that the trial court intended to utilize those documents as a substitute for a hearing if one became necessary due to a dispute over the value of the assets that were distributed to each party. Rather, in my view, the trial court sought the trial aids to determine if there were any outstanding issues that required resolution.

In fact, the trial aids, as filed, demonstrated that a trial was unnecessary. Wife filed a trial aid and an amended trial aid. In those documents, Wife agreed to the representation in Husband's petition as to the net value of the parcel of real property that he received and that did not have an assigned value in the marital settlement agreement. Additionally, based upon her personal knowledge of conditions during the marriage, Wife contended that, from the date of separation until entry of the marital settlement agreement, Husband received rental income of $18,000 that was defined as a marital asset in the settlement agreement. Husband thereafter filed a trial aid. Husband did not contest that he had received the $18,000 in rental income nor did he object to the fact that, Wife was entitled to one-half that amount. Instead, in that document, Husband attempted to open various matters that already were resolved in this action.

After the trial aids were submitted, the parties appeared before the court and reaffirmed that the retirement accounts, investment accounts, and pensions were distributed equally and were no longer at issue in these divorce proceedings. Accordingly, the court was faced with the tasks of valuing and distributing the personalty and real estate. Regarding the personal property, the court observed that all matters regarding the value of those items and which party received them was determined following Wife's first petition to enforce.

The court then turned its attention to the outstanding issues pertaining to the real estate. As noted, with respect to realty, there was only one piece that did not have an assigned value in the marital settlement agreement and that parcel was distributed to Husband. In her trial aid, Wife had agreed to Husband's representation as to its value. Thus, the court only had to arrive at a value for rental income defined as a marital asset. The trial court used Wife's figure of $18,000, which Husband never challenged as accurate in his trial aid or during his appearance before the trial court. Thus, the court entered the contested final order of distribution.

In this appeal challenging that order, Husband suggests that the court's order lacked an evidentiary basis because it was not permitted to use Exhibit 1 as proof of the value of the various marital assets. I agree with the majority's rejection of this proposition. While Exhibit 1 was not moved into evidence at the December 3, 2008 hearing, it is contained in the certified record as Exhibit A to Wife's first petition to enforce the property settlement agreement. In his own petition to enforce the property settlement agreement, Husband admitted that the parties entered a marital settlement accord; Exhibit 1/Exhibit A is the sole document in the record that could be characterized as constituting such an agreement. As noted, the document assigned values to the marital settlement agreement to nearly all marital assets. With only two exceptions, the questions of those values were resolved by the time Husband filed his peti-

tion to enforce. The two exceptions were determined based upon the trial aids: Wife agreed to Husband's valuation of the real estate and Husband failed to contest Wife's calculation of rent that he received either in his trial aid or at the hearing. Accordingly, Husband's allegation that there is no record support for the valuation of the marital assets cannot be sustained.

I disagree, however, with the majority's aspersions on the use of trial aids. The trial court requested those documents to ascertain if it needed to adduce further evidence in this protracted matter, especially since it had resolved two prior petitions regarding distribution of the marital assets.[1] The parties consented to and submitted timely and detailed trial aids. Neither the trial court nor any party herein suggested that the representations in the trial aids could be used as a substitute for competent evidence if they revealed the existence of any factual disputes, which they did not. Furthermore, contrary to the majority's position, the trial court did not "conclude" that these trial aids became "part of the record;" they were part of the record because they were filed. In his document, Husband raised no objection to Wife's calculation of rental income, and in hers, Wife assented to Husband's calculation of the fair market value of the real estate distributed to him. Thus, the trial

aids obviated the need for further proceedings, proved useful for judicious resolution of this matter, and conserved the court's resources.

I further disagree with the majority's position that, "Nothing in our rules of evidence or civil procedure contemplates the use of 'trial aids.'" Majority Opinion at 287. The documents in question were summaries of which marital assets were distributed to which party and the values of those assets, as set forth in Exhibit 1/Exhibit A. They also examined unresolved questions of the values, which proved to be uncontested, of two marital assets. While labeled as a trial aid, the documents served the same function as pretrial statements, which are used consistently to parse the issues that need to be resolved at trial. Indeed, since the use of trial aids was consented to by both parties, and proved to be of beneficial assistance to the trial court. I found their use to be appropriate and a proper exercise of the trial court's discretion in the management of this matter.

---

1.  In some measure, the trial aids herein could be compared to Summaries as contemplated by Pa.R.E. 1006.