J-S22034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| PAULA GRAPES, AS EXECUTRIX OF THE ESTATE OF DAVID B. GRAPES | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LINDA GRAPES | : | No. 1390 WDA 2023 |
| | : | |
| v. | : | |
| | : | |
| PAULA GRAPES | : | |
| | : | |

Appeal from the Order Entered October 25, 2023
In the Court of Common Pleas of Allegheny County
Family Court at FD15-007374-005

BEFORE: PANELLA, P.J.E., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: September 5, 2024**

This is a divorce case involving the enforcement of a marital settlement agreement (MSA) between David B. Grapes (Decedent) and Appellee Linda Grapes (Ms. Grapes). Decedent's second wife and widow, Paula Grapes (Appellant), appeals *pro se* from the October 25, 2023 order adopting the hearing officer's Report and Recommendation (Report), as modified by the trial court's order partially granting Ms. Grapes' exceptions. The October 25, 2023 order dismissed Appellant's exceptions, canceled a hearing, and

specified that the order was final.  After careful consideration of the record and law, we affirm.

Background

This case began on February 19, 2015, when Decedent filed for divorce from Ms. Grapes.  Decedent and Ms. Grapes were married for 40 years, and their assets included Decedent's business, W.W. Patterson.  On January 19, 2017, Decedent sold W.W. Patterson to the Lidan Sepson Corporation, and the proceeds were placed in escrow with PNC Bank.  *See* Report at 7.  On September 15, 2017, Decedent and Ms. Grapes executed the MSA.  Pertinently, the MSA addresses the allocation of proceeds and tax liabilities from the sale of W.W. Patterson; the MSA also provides that Ms. Grapes is responsible for any liability attributable to a 2010 promissory note she and Decedent executed "as Maker" to the "1999 IRREVOCABLE TRUST FOR ISSUE OF DAVID B. AND LINDA J. GRAPES" (1999 Trust).[1]  MSA at ¶¶ 19-27.

Decedent and Ms. Grapes were divorced by decree entered October 20, 2017.  Shortly after, Decedent married Appellant.  Decedent died on April 29, 2021.  Appellant is the executrix of Decedent's estate.  At Ms. Grapes' request, the trial court joined Appellant as an additional defendant in the enforcement matter.  Appellant, as executrix, subsequently substituted her appearance for Decedent as plaintiff.

_____

[1] Decedent and Ms. Grapes established the 1999 Trust for the benefit of their seven children.

The ensuing litigation has been fraught with procedural quirks and Appellant's disregard for the judicial process.

Parties' Dispute

Prior to Decedent's death, Ms. Grapes experienced difficulty obtaining the documentation from Decedent that she needed to file her taxes and comply with her obligations under the MSA.[2] On or about January 13, 2022, Ms. Grapes filed a petition to enforce the MSA (MSA Petition).

Paragraph 22 of the MSA, as well as an attached stipulation, provides that the parties are equally responsible for all capital gains and income tax liability. Ms. Grapes stated:

> It has now been over three (3) years since the deadline for filing of [Decedent's] 2017 Federal, state and local income tax returns has passed.
>
> To date, [Ms. Grapes] has not received [Decedent's] 2017 or 2018 income tax returns, any drafts of the 2017 and/or 2018 income tax returns, and no pro forma Joint income tax returns.
>
> [Ms. Grapes] desires to finalize all divorce related matters and receive her remaining share of marital property.
>
> Therefore, [Ms. Grapes] is respectfully requesting this matter be referred to one (1) of this Honorable Court's Divorce Hearing Officers for a three (3) hour Conciliation and any necessary subsequent proceedings.

MSA Petition at 5-6 (paragraph numbers omitted).

Ms. Grapes asserted that Decedent, "and/or his Estate is in breach of the MSA as [Decedent] failed to timely draft or finalize the 2017 tax returns

---

[2] According to Ms. Grapes, her counsel "sent no less than twelve (12) letters requesting this information." Ms. Grapes' Brief at 3 (citation omitted).

for W.W. Patterson and himself that are necessary to calculate each party's theoretical tax obligation under the MSA and to distribute the remaining funds held in escrow." Report at 4. Ms. Grapes also requested distribution of the net sales proceeds and an award of counsel fees for the necessity of bringing the enforcement action. *Id.*

On or about January 21, 2022, Ms. Grapes presented a motion to join Appellant as a party pursuant to Pa.R.C.P. 1920.34 (Joinder Motion). Ms. Grapes averred:

> [Appellant is] the beneficiary and Executrix of [Decedent's] estate. *See*, a true and correct copy of the May 19, 2021 email correspondence from counsel for [Decedent] attached hereto as Exhibit "B."
>
> During his marriage to [Ms. Grapes], [Decedent] was the owner of an interest in W.W. Patterson Company, a marital asset which was liquidated and divided as part of the equitable distribution proceedings.
>
> Prior to the execution of the MSA, the net sales proceeds were divided into two (2) accounts: PNC Escrow Account No. x0131 and BNY Mellon Escrow Account No. x0096.
>
> Paragraph 9 of the MSA dictates how the parties were to divide the balance of the PNC Escrow Account No. x0131.
>
> Specifically, after the payment of the tax liability estimate due as a result of the sale of the W.W. Patterson, [Ms. Grapes] was to receive the first $700,000 and the remaining was to be divided equally (*i.e.*[,] 50%/50%) between the parties. *See*, Paragraph 19, page 6 of Exhibit "A."
>
> Paragraph 19 of the MSA required funds to be withheld to cover [Decedent's] tax liability associated with the sale of W.W. Patterson on his 2017 and 2018 income tax returns, pursuant to Paragraph 22 of the MSA.

To date, despite the passage of over four (4) years, and despite numerous requests by [Ms. Grapes], [Decedent's] 2017 and 2018 tax returns have never been filed.

As such, undistributed funds, including [Ms. Grapes'] share of marital property, remain in the PNC Bank Escrow Account No. x0131.

Further, Paragraph 20 of the MSA dictates the division of the BNY Mellon Escrow Account No. x0096.

As of the date of this Motion, [Ms. Grapes] is unaware if any remaining balance exists in the BNY Mellon Escrow Account No. x0096.

Pennsylvania Rule of Civil Procedure 1920.34 provides, in pertinent part:

> At any stage of an action, the court may order the joinder of an additional person who could have joined or been joined in the action and may stay the proceedings in whole or in part until such person has been joined.

Further, the note to Pa.R.C.P. 1920.34 states that, "The joinder of persons other than husband and wife may be essential in claims ... where persons other than the parties have an interest in property which is the subject matter of a distribution."

Additionally, 23 Pa.C.S.[] §3323(f) provides the [trial c]ourt with equity power in order to protect the interests of the parties. This power includes the right to grant relief and remedies as equity and justice require against third parties over whom the [c]ourt has jurisdiction and who are concerned with or involved in the disposition of the cause before the [c]ourt.

As the beneficiary and Executrix of [Decedent's] estate, [Appellant] has an interest in the remaining balance of the PNC Bank Escrow Account No. x0131 and, in the event any balance remains, the BNY Mellon Escrow Account No. x0096.

Similarly, it is [Ms. Grapes'] understanding that [Decedent] and [Appellant] were married in 2017; therefore, [Decedent's] 2017 and 2018 income tax returns will presumably be filed jointly with [Appellant].

Joinder Motion at 1-3 (paragraph numbers omitted).

On January 31, 2022, the trial court issued orders joining Appellant as an additional defendant, and scheduling a conciliation before a hearing officer for April 1, 2022. In the scheduling order, the trial court further directed:

Twenty (20) days prior to the scheduled Conciliation, [Appellant] and/or the estate of [Decedent], shall produce the following documentation to counsel for [Ms.] Grapes:

a. Exact photocopies of [Decedent's] 2017 Federal, state and local income tax returns.

b. Exact photocopies of [Decedent's] 2018 Federal, state and local income tax returns.

c. If the 2017 and/or 2018 Federal, state and local income tax returns have not been filed, any and all drafts and supporting documentation provided to [Decedent's] accountant in anticipation to prepare the same.

d. Any and all documentation evidencing [Decedent's] and/or his estate's efforts to compete and finalize the 2017 and 2018 Federal, state and local income tax returns.

e. Any and all documentation, including pleadings and Court Orders, filed in the litigation between [Decedent] and/or his estate and Lidan Sepson.

f. Exact photocopies of the monthly statements for the BNY Mellon Escrow Account No. x0096 from inception through the date of production.

Order, 1/31/22, at 2.

On or about February 15, 2022, Decedent's counsel presented a motion to withdraw from representation. Counsel explained that she had "only been retained by David Grapes who is now deceased and [counsel] has never been retained by [Appellant] to handle these matters." Motion to Withdraw, 2/15/22, at 2. Counsel further averred that she "fully advised [Appellant] of

the conference scheduled for April 1, 2022[,] before the divorce hearing officer and the deadline for providing documents prior thereto." **_Id._** On March 7, 2022, the court entered an order granting counsel's request to withdraw.

Appellant did not provide the documents, and did not appear at the April 1, 2022 conciliation. On April 4, 2022, the hearing officer issued a report and recommendation (First Report) which explained:

> The undersigned emailed Microsoft Teams invitations to [Appellant] and Counsel for [Ms. Grapes] on March 29, 2022. [Ms. Grapes'] Counsel accepted the invitation. [Appellant] did not respond to the invitation.
>
> At the appointed date and time, the undersigned and Counsel for [Ms. Grapes] appeared on Microsoft Teams. [Appellant] did not appear and she did not arrange for counsel to appear on her behalf.

First Report at 2.

Noting the "rather tortured history of this case," the hearing officer stated:

> For a myriad of reasons, none of them attributable in any fashion to [Ms. Grapes], [Decedent] did not file his 2017 federal, state, and local income tax returns in a timely fashion, or even after having received an extension to October 15, 2018. Counsel for [Ms. Grapes] contacted [Decedent's] divorce and business attorneys numerous times in 2019, 2020, and 2021 to inquire as to the status of the filing of the tax returns. A response indicating that the returns had been filed was not forthcoming.
>
> [Decedent] died … on April 29, 2021.
>
> Although desiring to finalize the division of the escrow funds, which totaled over $1,280,000 as of December 31, 2021, [Ms. Grapes] delayed attempting to move the matter forward until January 2022, when she filed the pending Petition and a Petition to Join [Appellant] as an Additional Defendant. Pursuant to an Order dated January 31, 2022, which scheduled the Conciliation

before the undersigned for April 1, 2022, [Appellant] or [Decedent's] Estate were required to produce several documents, including [Decedent's] 2017 and 2018 Federal, State, and Local Income Tax Returns with supporting documents, on or before March 11, 2022. No documents were produced.

Rather than attend the Conciliation or retain counsel to attend the Conciliation on her behalf, [Appellant] sent a letter to the undersigned via email dated March 31, 2022 at 7:47 p.m., which was copied to Counsel for [Mrs. Grapes]. …

While the undersigned is sensitive to [Appellant's] present medical situation, [Mrs. Grapes] has been very patient in waiting for her share of the escrowed proceeds, including allowing [Appellant] several months to grieve the loss of [Decedent]. [Appellant] did not open an estate in Illinois until a few days prior to the scheduled conciliation, which is almost a year after [Decedent's] death.

The escrowed funds have been languishing in an account paying minimal interest for over four (4) years due to [Decedent's] actions or inactions. This case must be finalized and such will not occur without court intervention and sanctions forcing the matter forward. Accordingly, the Divorce Hearing Officer recommends the following Order[, which, *inter alia*, found Appellant in contempt for failing to produce the documents as ordered by the trial court on January 31, 2022].

*Id.* at 2-4.

Shortly after the hearing officer issued the First Report, Appellant retained counsel and filed exceptions. Appellant also filed a substitution of appearance for Decedent as plaintiff.[3] **See** Substitution of Paula Grapes,

---

[3] The Divorce Code provides for substitution of a party if "one of the parties dies after the decree of divorce has been entered, but prior to the final determination in such proceeding of the property rights and interests of the parties…, the personal representative of the deceased party shall be substituted as a party as provided by law and the action shall proceed." 23 Pa.C.S. § 3323(d). "The procedure to substitute the personal representative of the deceased party shall be in accordance with Rule 2352." Pa.R.C.P. 2355(a). Rule 2352 provides: "The successor may become a party to a

*(Footnote Continued Next Page)*

4/28/22, at 1 (stating, "On April 13, 2022, [Appellant] was appointed executrix of Decedent's estate by the Clerk of Courts in the Circuit Court of the Eighteenth Judicial Circuit, County of DuPage, State of Illinois, at Case No. 2022PR000293").

Between May and August 2022, Appellant filed multiple pleadings which have little bearing on this appeal, but reflect Appellant's litigious course of conduct. Ms. Grapes filed responses, and on June 5, 2022, the trial court issued five orders addressing Appellant's various requests. Appellant still had not produced the documentation as requested by Ms. Grapes, ordered by the trial court, and recommended in the hearing officer's First Report.

On July 6, 2022, Ms. Grapes praeciped for an enforcement hearing. The hearing was scheduled for September 30, 2022.

On August 12, 2022, the trial court ordered that argument on Appellant's exceptions be heard on September 12, 2022. On August 24, 2022, Appellant filed a motion requesting leave to amend her exceptions. The trial court entered an order denying the request on August 30, 2022.

On September 7, 2022, Appellant filed a motion for special relief asserting that she had produced the documents, and had thus purged any contempt. Petition for Special Relief, 9/7/22, at 10. The next day, the trial court issued the following order:

---

pending action by filing of record a statement of the material facts on which the right to substitution is based." Pa.R.C.P. 2352(a).

The [First] Report … is hereby VACATED. [Appellant] is not in contempt of the January 31, 2022 Order [] because the issue of contempt was never properly raised and preserved….

[Appellant's] Exceptions to the Divorce Master's Report filed on April 22, 2022, are DISMISSED AS MOOT. The Oral Argument on the exceptions scheduled for September 12, 2022, is CANCELLED.

\*\*\*

The September 30, 2022 Hearing before the Divorce Hearing Officer shall remain as scheduled. The Hearing Officer is directed to hear argument, on the record, on the Petition to Enforce a Martial Settlement Agreement filed by [Ms.] Grapes on or about January 21, 2022, as well as any other matters properly raised and preserved, and issue an appropriate report and recommendation.

Order, 9/8/22, at 1-2.

Approximately one week later, Appellant's counsel withdrew his appearance.[4] Appellant has proceeded *pro se* since September 16, 2022. As both plaintiff and additional defendant,[5] Appellant has impeded the resolution of this case by filing numerous motions and petitions, while ignoring the trial court's orders. **See** Ms. Grapes' Brief at 26 (stating, "The claims raised and allegations made by [Appellant] … have certainly prejudiced [Ms. Grapes] as a result of the volume of uncontrolled litigation and frivolous claims"). Nearly

_____

[4] With Appellant's consent, the trial court granted counsel permission to withdraw. Counsel had presented an emergency motion averring that he and Appellant had "a fundamental disagreement on how to move forward." Withdrawal Motion, 9/14/22, at 6. Counsel attached Appellant's "Entry of Appearance of Self-Represented Party," and stated that he characterized the motion as an emergency, "due to Motions Court availability and [counsel's] representation of [Appellant] ha[ving] ceased." **Id.**

[5] While Appellant's two-party status appears to present a conflict, we have found no legal authority on point with these circumstances, and Appellant's dual-party role does not impact our disposition.

all of Appellant's serial *pro se* filings have been denied by the trial court or resolved as a result of Mrs. Grapes' concessions – presumably to move the matter along.

Appellant's *Pro Se* Representation

On September 26, 2022, Appellant filed a *pro se* motion for special relief requesting to add a new matter pertaining to a claim of over $50,000 for transactional/legal fees related to the sale of Decedent's business. The trial court denied the motion on September 29, 2022.

The hearing officer conducted the enforcement hearing on September 30, 2022, and issued her Report on November 4, 2022. The hearing officer recommended:

> Within ten (10) days from the date of this recommendation, [Appellant], as Executrix of the Estate of [Decedent], shall file all necessary 2017 and 2018 federal and state tax returns for W.W. Patterson and [Decedent]. [Appellant] shall provide true and correct copies of the filed returns to Counsel for [Ms.] Grapes within three (3) calendar days of filing. Any penalties, late fees, or interest imposed by the Internal Revenue Service that are due to the late filing of the returns shall be the sole responsibility of the Estate of [Decedent]. The Estate of [Decedent] shall indemnify and hold [Ms.] Grapes harmless for same.
>
> ***
>
> [Ms.] Grapes is awarded counsel fees in the amount of $10,000. These funds shall be paid from the Estate of [Decedent's] share of the PNC Bank Escrow Account x0131 as calculated in Paragraph 4 below.

Report at 11-12 (paragraph numbers omitted).

Both parties filed exceptions.[6]  Ms. Grapes asserted that the hearing officer erred by failing to,

> direct that any refund(s)/overpayment(s) due in connection with the pro forma 2017 personal income tax liability of [Decedent] and [Ms.] Grapes be either deposited into the PNC Bank Escrow Account No. x0131 or assessed against the Estate of [Decedent] in the calculation of the amount(s) due to each party pursuant to the [MSA; and]

> award [Ms.] Grapes the entirety of the counsel fees incurred as a result of [Decedent's] failure to comply with the terms of the parties' Marital Settlement Agreement.

Ms. Grapes' Exceptions, 11/22/23, at 3.

Appellant asserted 38 errors by the hearing officer.  Appellant's Exceptions, 11/29/23, at 3-11.  In two of her claims, Appellant asserted the hearing officer failed to properly address "the unpaid 1999 Irrevocable Trust Promissory Note, and the related tax implications." *Id.* at 5-6.

Also, Appellant had filed a petition for special relief on September 26, 2022, and two petitions to enforce the MSA on October 17, 2022 and November 2, 2022.  The trial court denied Appellant's three petitions in two orders entered on September 27, 2022 and November 29, 2022.  On December 14, 2022, Appellant filed a motion for reconsideration of the November 29, 2022 order.  The trial court denied the motion on December 28, 2022.

---

[6] Appellant filed exceptions "as Executrix of the Estate of David B. Grapes, Substitute Plaintiff and as Additional Defendant."  Exceptions, 11/28/22, at 1.

Appellant continued to file *pro se* pleadings with the trial court in 2023. On December 22, 2022, Appellant filed her first Superior Court appeal.

Remarkably, Appellant has sought relief with this Court eight times in less than two years (1506 WDA 2022, 496 WDA 2023, 513 WDA 2023, 613 WDA 2023, 614 WDA 2023, 1311 WDA 2023 and 1312 WDA 2023). We quashed the prior appeals for lack of jurisdiction. Beginning in January 2023, this Court issued *per curiam* rules to show cause in four of Appellant's appeals. We inquired about the finality of the trial court orders, but also stated:

> [Appellant], acting *pro se*, purports to appeal as executrix of the estate of [Decedent]. A *pro se* plaintiff, however, may not represent the estate of a decedent. ***See, e.g.***, ***Norman for Estate of Shearlds v. Temple Univ. Health Sys.***, 208 A.3d 1115, 1120 (Pa. Super. 2019), [*appeal denied*, 223 A.3d 668 (Pa. 2020), *cert. denied*, ––– U.S. ––––, 141 S.Ct. 301 (2020),] (stating that "Given the complex legal issues that may arise during the representation of an estate[,] prohibiting a non-attorney from representing an estate is essential to protecting the interests of the public." (citation, ellipses, and original quotation marks omitted)).

Order (1506 WDA 2022), 1/27/23, at 1; Order (513 WDA 2023), 6/2/23, at 1-2; Order (496 WDA 2023), 6/5/23, at 1-2; Order (613 WDA 2023), at 1-2.[7]

On April 25, 2023, the trial court decided the parties' exceptions to the November 4, 2022 Report. The trial court ordered:

> [Ms. Grapes'] Exceptions are GRANTED IN PART and DISMISSED IN PART. [Ms. Grapes'] exception regarding overpayment in

---

[7] In the current appeal, this Court issued a *per curiam* rule to show cause concerning the appealability of the October 25, 2023 order, but did not reference Appellant's *pro se* representation because it appeared to be a merits issue more properly reserved for panel consideration.

connection with the pro forma 2017 personal income tax liability is GRANTED. Any refunds due from the IRS or Pennsylvania Department of Revenue shall be deposited into PNC Bank Escrow Account No. x0131 and disbursed in accordance with Paragraph 4 of the Hearing Officer's Recommendation. If a refund is received, [Appellant] shall provide proof of the deposit directly to [Ms. Grapes'] counsel within twenty-four (24) hours of notice and/or receipt of the refund. The remainder of [Ms. Grapes'] exceptions are DISMISSED.

[Appellant's] Exceptions are also GRANTED IN PART and DISMISSED IN PART. [Appellant's] exceptions regarding the outstanding Promissory Note owed to the 1999 Irrevocable Trust are GRANTED. The matter is hereby remanded to the Hearing Officer for a 1-day hearing….

\*\*\*

The remainder of [Appellant's] exceptions are DISMISSED.

Order, 4/25/23, at 1-2.

Appellant continued to file various pleadings in the trial court and this Court. The remand hearing did not occur and the case did not progress toward resolution.

### Appellant's Failure to Obtain Counsel

On September 14, 2023, Ms. Grapes filed a motion to compel Appellant to engage counsel. Ms. Grapes averred that Appellant "cannot represent the Estate as those actions constitute the unauthorized practice of law." Petition to Compel, 9/14/23, at 6 (citing *Norman for Estate of Shearlds*, *supra*, and *Bisher v. Lehigh Valley Health Network, Inc.*, 265 A.3d 383, 406 (Pa. 2021) ("A court has no discretion to tolerate the unauthorized practice of law, and may not allow a person to engage in the unauthorized practice of law simply because the adverse party does not object.")).

- 14 -

In response, the trial court issued two orders requiring Appellant to engage counsel. The first order stated:

[] By Friday, September 29, 2023 at 4:00 p.m.[,] [Appellant] shall engage counsel to represent the Estate of [Decedent] and a Praecipe for Appearance shall be filed with the Department of Court Records. **Failure to do so shall result in an immediate dismissal and cancellation of the remand hearing and all claims raised by [Appellant] in that action**.

[] Counsel for [Appellant] shall notify the [c]ourt by email at that time whether [Appellant] has complied with this Order.

Order, 9/27/23 (emphasis added). The second order reiterated that Appellant was to obtain counsel, but extended the time for doing so to October 13, 2023. Amended Order, 10/2/23.

Appellant did not obtain counsel. Accordingly, the trial court issued the October 25, 2023 order based on Appellant's "having failed to comply" with the September 27, 2023 and October 2, 2023 orders. Order at 1. The trial court canceled the hearing, dismissed Appellant's exceptions, and adopted the hearing officer's Report as modified by the trial court's April 25, 2023 order partially granting Ms. Grapes' exceptions. *Id.*

Appellant now appeals from the October 25, 2023 order.[8] Although the trial court "declined to require a statement of errors under Rule 1925(b)," it issued an opinion advocating for dismissal of the appeal. Trial Court Opinion

_____

[8] Appellant timely filed a notice of appeal on November 27, 2023, as Friday, November 24, 2023, was a court holiday. *See* Pa.R.A.P. 903(a) (stating a notice of appeal shall be filed within 30 days of the entry of the order from which the appeal is taken); *see also* 1 Pa.C.S. § 1908 (directing that weekends and legal holidays are excluded from time computation).

(TCO), 1/10/24, at 3-6. The trial court found "this matter falls squarely within the line of cases" which preclude a non-attorney from representing an estate and engaging in the unauthorized practice of law. *Id.* at 4-5 (citing ***Norman for Estate of Shearlds*** and ***Bisher***). The trial court observed "that pleadings unlawfully filed by non-attorneys[,] … after notice to the offending party and opportunity to cure[,] … are voidable in the discretion of the court in which the unauthorized practice of law took place.'" *Id.* at 6 (citing ***Bisher***, 265 A.3d at 389). Thus, the trial court entered the October 25, 2023 order dismissing Appellant's exceptions.

<u>Appellant's Issues</u>

Appellant presents the following 12 questions for review:

A. Whether the [t]rial [c]ourt erred and/or abused its discretion by not enforcing [MSA] Paragraph 27 and the signed Consent[,] and not ordering [Ms.] Grapes to make the required payment to the 1999 Irrevocable Trust as was agreed upon in the MSA?

B. Whether the [t]rial [c]ourt erred and/or abused its discretion by ordering [Appellant] to provide [Decedent] and [Appellant's] personal joint tax returns to [Ms.] Grapes when there is no such provision in the [MSA]?

C. Whether the [t]rial [c]ourt erred and/or abused its discretion by modifying and changing the [MSA] dated September 15, 2017 when it granted, in part, [Ms.] Grapes' exception regarding overpayment of taxes and ordered [Appellant] to deposit any refund, if received, from the IRS or the Pennsylvania Department of Revenue, from [Decedent] and [Appellant's] personal and joint 2017 tax returns directly into the PNC Bank Escrow Account No. xx-0131, when there is no provision in the [MSA] that required [Decedent] and/or [Appellant] to do such?

D. Whether the [t]rial [c]ourt erred and/or abused its discretion by dismissing [Appellant's] exceptions and order[ing] payment from the PNC Bank Escrow funds to [Ms.] Grapes' son, Taylor

- 16 -

Grapes, when "Taylor Gift Letter and/or Special Incentive Award, Project Patagonia Award" was not specified or included in the parties' [MSA] dated September 15, 2017?

E. Whether the [t]rial [c]ourt erred and/or abused its discretion by modifying and changing the [MSA] for the financial benefit of [Ms.] Grapes and to the detriment of the Estate and [Appellant], when the [c]ourt only had the power to enforce the agreement as it was agreed upon, written and signed by the parties?

F. Whether the [t]rial [c]ourt erred and/or abused its discretion by ordering [Appellant], as Estate Executor, to engage counsel and prohibit her from continuing to represent *pro se* in this litigation, when the Estate has no creditors and only one beneficiary, that being [Appellant]?

G. Whether the [t]rial [c]ourt erred and/or abused its discretion by canceling the remand hearing … and precluding [Appellant] from presenting the merits of her claims against [Ms.] Grapes' breach of the [MSA's] Paragraphs 27 and 19?

H. Whether the [t]rial [c]ourt erred and/or abused its discretion by granting [Ms.] Grapes' exceptions in part and making the final Divorce Hearing Officer's Report[,] … [as] modified April 25, 2023, into a final Order on October 25, 2023, and dismiss[ing] [Appellant's] exceptions and claims, solely because [Appellant] was representing *pro se*?

I. Whether the [t]rial [c]ourt erred and/or abused its discretion by dismissing [Appellant's] exceptions?

J. Whether the [t]rial [c]ourt erred and/or abused its discretion by dismissing [Appellant's] exceptions and awarding [Ms.] Grapes $10,000 in attorneys' fees?

K. Whether the [t]rial [c]ourt erred and/or abused its discretion by not adhering to or taking any action towards [Ms. Grapes'] attorneys' repeated and gross violations of Pa. laws and Rules of Professional Conduct throughout this litigation, causing irreparable harm and damages to [Appellant]?

L. Whether the [t]rial [c]ourt erred and/or abused its discretion by Judge Hugh F. McGough's violations of Pa. Code of Judicial Conduct, throughout this litigation, whereupon [Appellant's] rights to due process were denied?

Appellant's Brief at 4-8.

### Legal Authority

In reviewing an order disposing a motion to enforce a marital settlement agreement, "we consider whether the trial court abused its discretion or made an error of law." ***Green v. Green***, 69 A.3d 282, 285 (Pa. Super. 2013) (citation omitted). "If supported by credible evidence of record, the trial court's findings of fact are binding upon the appellate court." ***Id.*** The trial court may adopt a hearing officer's report, which is "given the fullest consideration[,] particularly on the issue of credibility of witnesses, which the trial court is not empowered to second-guess." ***K.B. v. M.F.***, 247 A.3d 1146, 1150 (Pa. Super. 2021) (citations omitted).

*Pro Se Representation of an Estate*

Because they are dispositive, we collectively address Appellant's five issues, F-J, relating to Appellant's commitment to proceeding *pro se*. As indicated above, Appellant filed her exceptions as executrix of Decedent's estate and as additional defendant. The trial court stated that it "followed ***Bisher***'s guidance and gave Appellant ample opportunity to cure the cited defect and engage counsel." TCO at 5. The trial court explained:

> Unfortunately, … Appellant failed to act. The court considered several remedies, but with no clear way to bifurcate the issues raised by [Appellant] as Additional Defendant and [Appellant] as representative of the estate, we were left with no other option than to cancel the pending hearing and dismiss the remaining exceptions that had been raised by the estate.

***Id.***

Appellant states that she "decided to represent the Estate and herself *pro se*, as guaranteed by 28 U.S.C. § 1654." Appellant's Brief at 20. She also claims, without citing any authority, that she "meets all criteria to continue *pro se* representation." ***Id.*** at 61. According to Appellant, the trial court's opinion "misled this [C]ourt and is deplorably inaccurate." ***Id.*** at 62. In addition, Appellant emphasizes that she *pro se* filed "multiple written motions, pleadings, answers, briefs and exceptions," and "opposing counsel and the [t]rial [c]ourt never made any objection[.]" ***Id.*** at 66. Appellant contends "the objection only came after [Ms. Grapes'] attorneys … and [the trial court] became aware that [Appellant] was filing complaints with the Disciplinary Board against [Ms. Grapes'] attorneys for their gross legal violations[,] and with the Judicial Conduct Board for misconduct [by the trial court]." ***Id.*** Appellant further claims her "overwhelming incriminating evidence against" Ms. Grapes and/or her counsel prompted Ms. Grapes to file "her retaliatory [p]etition" to compel Appellant to engage counsel. ***Id.*** at 67. Appellant's argument lacks merit.

First, Appellant cites no pertinent legal authority. ***See*** Pa.R.A.P. 2119(a) (requiring the argument to "present such discussion and citation of authorities as are deemed pertinent"). In citing a federal statute, 28 U.S.C. § 1654, Appellant disregards that this case is in state court. Also, while 28 U.S.C. § 1654 provides for a party's "appearance personally or by counsel," the Third Circuit of the United States Court of Appeals has held that a non-attorney administrator may not conduct a *pro se* action on behalf of an estate.

***Murray on behalf of Purnell v. City of Philadelphia***, 901 F.3d 169 (3d Cir. 2018).  The Court of Appeals explained:

> Under 28 U.S.C. § 1654, "the parties may plead and conduct their own cases personally or by counsel" in the federal courts.
>
> ***
>
> Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court. This principle has been applied by the Supreme Court, this Court, and other courts in various contexts.

***Id.*** at 170-71 (citations omitted).

Under Pennsylvania law, a non-attorney administrator of an estate may not represent an estate *pro se*.  ***Norman for Estate of Shearlds***, 208 A.3d at 1121.  It "is irrelevant whether [the a]ppellant held himself out to be a licensed attorney; the dispositive fact is that [the a]ppellant, who is not an attorney, … endeavored to represent the Estate[.]"  ***Id.***  In deciding whether a person could represent another's interests, our Supreme Court has identified the following factors:

> whether the proceedings by design are intended to be brief and informal, not intended to be intensely litigated; whether the evidentiary rules apply; the amounts generally at issue in proceedings of that type; whether there is prehearing discovery; whether normally only questions of fact and not complex legal issues are involved; and whether the fact-finder is not required to be a lawyer.

***Harkness v. Unemployment Compensation Board of Review***, 920 A.2d 162, 341 (Pa. 2007).

Addressing public policy, the Commonwealth Court has stated:

> Given the complex legal issues that may arise during the representation of an estate, … prohibiting a non-attorney from representing an estate is essential to protecting the interests of the public, and … regardless of his relationship to the decedent, [a *pro se* appellant] may not represent the Estate.

***In re Estate of Rowley***, 84 A.3d 337, 342 (Pa. Cmwlth. 2013).[9]

*Unauthorized Practice of Law*

In ***Delaware Valley Landscape Stone, Inc. v. RRQ, LLC***, 284 A.3d 459, 465 (Pa. Super. 2022), this Court held that trustees could not represent a trust *pro se*. Consequently, we struck the trustees' appellate brief, and directed that the trust retain counsel.[10] This Court explained:

> Section 2501 of the Judicial Code guarantees an individual's right to self-representation in civil matters. ***See*** 42 Pa.C.S. § 2501(a) (stating that "[i]n all civil matters before any tribunal every litigant shall have a right to be heard, by himself and his counsel, or by either of them"). However, it well settled that, with certain exceptions, non-attorneys may not represent other parties before Pennsylvania courts. Further, the unauthorized practice of law is prohibited and criminalized in Pennsylvania. ***See*** 42 Pa.C.S. § 2524(a).

***Id.*** at 462 (some citations omitted). Moreover, "a court cannot ignore the unauthorized practice of law and must intervene." ***Bisher***, 265 A.3d at 406 (observing that a court "has no discretion to tolerate the unauthorized practice

---

[9] This Court is not bound by decisions of the Commonwealth Court, but "such decisions provide persuasive authority, and we may turn to our colleagues on the Commonwealth Court for guidance when appropriate." ***Norman for Estate of Shearlds***, 208 A.3d at 1120 n.3 (citation omitted).

[10] We retained jurisdiction, and counsel entered an appearance and filed an appellate brief. ***See Delaware Valley Landscape Stone, Inc. v. RRQ, LLC***, --- A.3d ----, No. 2103 EDA 2021 (Pa. Super. filed Jul. 8, 2024) (*en banc*).

of law, and may not allow a person to engage in the unauthorized practice of law simply because the adverse party does not object") (citation omitted).

In **Bisher**, Brenton and Carla Bisher filed a *pro se* complaint alleging medical malpractice involving the death of their adult child. Each parent brought a wrongful death claim, and Carla Bisher filed a survival action on behalf of the child's estate. *Id.* at 388. The trial court struck the Bisher's amended complaint with prejudice because of defects in the certificates of merit. *Id.* On appeal, this Court *sua sponte* determined that the Bishers committed two errors "that deprived the trial court of subject-matter jurisdiction over all claims: Carla's unauthorized practice of law and the lack of verification of the complaint." *Id.* at 388-89. We concluded that we lacked jurisdiction and quashed the appeal. *Id.* at 389. The Supreme Court expressed its disagreement:

> We find that neither the unauthorized practice of law in the trial court nor the lack of verification identified by the Superior Court implicated subject-matter jurisdiction…. We also disagree with the panel's alternative holding that the trial court properly struck the amended complaint because of the defects in the Certificates of Merit. Because the unauthorized practice of law issue will be ripe for further litigation on remand, we conclude that pleadings unlawfully filed by non-attorneys are not void *ab initio*. Instead, **after notice to the offending party and opportunity to cure, the pleadings are voidable in the discretion of the court in which the unauthorized practice of law took place**.

*Id.* (emphasis added). The Supreme Court remanded the case because "the trial court cannot permit the unauthorized practice of law." *Id.* at 421. The Supreme Court, "presuming that an attorney will enter his or her appearance

- 22 -

on behalf of the Estate and/or the Bishers," directed that the trial court "decide whether the pleadings rendered defective as a result of the unauthorized practice of law may be cured consistent with the principles set forth in this opinion." **Id.** Significantly, the Supreme Court "concluded that filings by individuals engaged in the unauthorized practice of law are voidable, but curable." **Delaware Valley Landscape Stone, Inc.**, 284 A.3d at 464 (citing **Bisher**, 265 A.3d at 403-05). The Supreme Court stated:

> The default position … should be that the offending party should be given a "reasonable opportunity" to cure. But we are not convinced that the rule is absolute. … [T]here may be cases in which the unauthorized practice of law is an attempt to game the system.

**Bisher**, 265 A.3d at 409.

> As we explained in **Delaware Valley**,
>
> the **Bisher** Court concluded that this Court took appropriate action in ordering [Carla Bisher] to cease her [*pro se*] actions and retain counsel because courts may *sua sponte* intervene to prevent further unauthorized practice of law. **Bisher**, 265 A.3d at 406. However, the Supreme Court cautioned that this intervention "does not extend to undoing what had already transpired at the trial court level*.*" **Id. The Supreme Court further noted that if [Carla Bisher] had refused to hire an attorney, it would be appropriate for this Court to dismiss all of the appellate claims relating to the father and the estate**. **Id.**

**Delaware Valley Landscape Stone, Inc.**, 284 A.3d at 464 (emphasis added); **Bisher**, 265 A.3d 406 (finding that this Court "would have been justified in dismissing all of the appellate claims pertaining to … the Estate[,] had Carla [Bisher] refused to hire an attorney").

Here, the trial court gave Appellant a reasonable opportunity to obtain counsel. The trial court did not err or abuse its discretion, and demonstrated notable forbearance, before entering the October 25, 2023 dismissing Appellant's exceptions. Accordingly, we affirm the October 25, 2023 order, and direct Appellant to obtain counsel should she seek future relief with this Court in this matter.[11]

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

9/5/2024

---

[11] We caution Appellant to consider her litigious behavior. This Court has often stated that "any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **See Thomas v. Thomas**, 194 A.3d 220, 229 (Pa. Super. 2018) (citation omitted). *Pro se* status confers no special benefit. **Id.** Further, we remind the trial court and both parties that excessive filing and engaging in conduct that is abusive to our court system may warrant sanctions. The trial court has authority to award counsel fees for dilatory, obdurate or vexatious conduct. 42 Pa.C.S. § 2503(7); **see also Hein v. Hein**, 717 A.2d 1053, 1056 (Pa. Super. 1998) (holding that where a party disrupts the fair and orderly process of the action, a court acts appropriately in imposing severe sanctions if necessary to take control of the situation); **Winpenny v. Winpenny**, 643 A.2d 677, 679 (Pa. Super. 1994) ("Abuse of the court system, whether by seasoned attorneys or by *pro se* parties, cannot be tolerated.").